IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

AUG 0 4 2004

Michael N. Milby, Clerk of Court
By Deputy Clerk D. Christock

MARIO ALANIZ, JR.                        §
                                         §
            Plaintiff                    §
                                         §
v.                                       §        C.A. No. B-04-40
                                         §
THE CITY OF SULLIVAN CITY,               §
TEXAS, ET AL.                            §
                                         §
                                         §
            Defendants.                  §

## ORDER

BE IT REMEMBERED that on August 4, 2004, the Court considered Defendants'
*Amended Motion to Transfer Venue* [Dkt. No. 9-1], *Amended Motion to Dismiss* [Dkt.
No. 9-2], *Amended Motion for More Definite Statement* [Dkt. No. 9-3], and *Amended
Motion to Stay Discovery* [Dkt. No. 9-4].

### I. Factual and Procedural Background

Plaintiff brings claims against Defendants for constitutional First Amendment and
Fourteenth Amendment Due Process violations pursuant to 42 U.S.C. § 1983 and §
1985. Additionally, Plaintiff brings state claims for defamation of character, intentional
infliction of emotional distress, civil conspiracy, and violations of the Texas
Whistleblower statute. Defendants collectively filed both a motion to transfer venue and
a motion to dismiss all claims.

Plaintiff Mario Alaniz, Jr. served as the Chief of Police for Sullivan City, Texas
from July 27, 2002, until December 15, 2003, when he was terminated. Plaintiff alleges
that in late November 2003, he began reporting to the Hidalgo County District
Attorney's ("D.A.") Office "violations of law" . . . "occurring in . . . Sullivan City." Pl's
Original Cmplt. ¶ 3.3. Plaintiff complained the Mayor of Sullivan City was "interfering
with . . . police business" by "ordering the officers to conduct traffic stops and issue
citations" to the Mayor's political opponents and those affiliated or associating with
these political opponents. *Id.* In addition, Plaintiff alleges the Mayor ordered officers

and city personnel to issue warnings only (instead of citations) to friends and political allies. Plaintiff also complained of this conduct directly to the Mayor.

Plaintiff states in his complaint that upon notification by the District Attorney, Rene Guerra, of Plaintiff's complaints against the Mayor, the Mayor retaliated against Plaintiff by informing others that Plaintiff would be demoted, the Mayor would take Plaintiff's unit away from him, and Plaintiff would not be allowed to do outside security work. *Id.* ¶ 3.6. The Mayor and Defendant Rolando Gonzalez, the City Manager, approached Plaintiff. The Mayor stated to Plaintiff that after speaking with his son, State Representative Kino Flores, he determined he could "get rid of Plaintiff." During this encounter, the Mayor informed Plaintiff that he was aware of Plaintiff's complaint to the D.A. *Id.* ¶ 3.7.

On December 7, 2003, Plaintiff received a memorandum delivered to his residence, which informed him that he was suspended. The memorandum did not specify a reason for the suspension. *See* Pl's Original Cmplt, Ex. A. Plaintiff alleges that at this time, the Mayor told "everyone" that Rene Guerra, the D.A., informed him (the Mayor) that the D.A. would take no action, and the Mayor could fire Plaintiff. Plaintiff further alleges the Mayor began spreading rumors that Plaintiff was tampering with evidence. *Id.* ¶ 3.9. Additionally, Plaintiff contends the Mayor "conspired" with the then Assistant Chief of Police and other officers to undermine Plaintiff and "talk bad" about the Plaintiff.

On December 8, 2003, Plaintiff reported the above matters to the Hidalgo County Sheriff's office. On December 11, 2003, with assistance of counsel, Plaintiff sent a letter of grievance to the City Manager, Rolando Gonzalez. *See id.* Ex. B. In this letter,[1] Plaintiff expressed objection to his suspension, and indicated that without a reason given in the suspension memorandum, he could not adequately respond to charges against him, which violated his due process rights. Plaintiff requested

---

[1]Plaintiff attaches to his complaint the December 11, 2003, grievance letter sent by counsel to the City Manager and Council Members. *See* Pl's Cmplt., Ex. B. As this letter is central to Plaintiff's liberty interest claim and Plaintiff directly refers to it in his complaint, the Court considers it part of the pleadings. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (citations omitted).

immediate reinstatement and the removal of any negative or false documentation from his personnel file.  In the alternative, Plaintiff requested a public hearing in which the City would provide him with reasons for his suspension, to which he would be given the opportunity to respond publically at a subsequent public meeting.  Plaintiff sent a copy (cc) of the letter to the Mayor and two City Commissioners.  Plaintiff never received a written response to this grievance letter from the City.  Instead, on December 15, 2003, unspecified persons (not a named Defendant) informed Plaintiff that a meeting was scheduled at City Hall to discuss "the status of Chief of Police."  Plaintiff alleges he was not allowed to speak on his behalf at the meeting, and Plaintiff was fired after a brief executive session meeting.  The City gave Plaintiff no reason for his termination.  *See id.* ¶ 3.12.

Plaintiff alleges the Mayor and his son, Representative Kino Flores, told officers and people in the community that Plaintiff was unable to do his job, and the Mayor "eluded [sic] to misbehavior on the part of Plaintiff such as stealing from the evidence room to place Plaintiff in false light."  *Id.* ¶ 3.14.  Plaintiff alleges rumors are circulating that he was terminated as a result of "stealing, drug [sic] and possession of pornographic materials at the office," which Plaintiff alleges are completely false.  *Id.* ¶ 3.16.  Plaintiff states he has been "blackballed" by Defendants, and this has adversely affected his employment prospects in the community.  Plaintiff asserts the Mayor told individuals that Plaintiff was fired because he was a "whistleblower."  *Id.* ¶ 3.18.

## II. Motion to Transfer Venue – Applicable Law and Analysis

Defendant seeks an inter-division transfer from the Brownsville Division to the McAllen Division within the Southern District of Texas pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division were it might have been brought."  Defendant, as the movant, bears the burden of demonstrating to the Court that transfer is warranted. *See Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989). The decision to transfer a case rests within the sound discretion of the district court, and these decisions will be overturned only for an abuse of discretion. *See id.* at 1436.

3

Despite Plaintiff's arguments otherwise, the Court embarks on the same transfer analysis for both an *inter-district* transfer and an *inter-division* transfer under 1404(a). *See, e.g., Langton v. Cbeyond Communications, L.L.C.,* 282 F. Supp. 2d 504, 512 (E.D. Tex. 2003); *Thurmond v. Compaq Computer Corp.,* 2000 WL 33795090 at *5 (E.D. Tex. Mar. 1, 2000) ("regardless whether the litigant moves for *inter* or *intra* district transfer, the analysis remains the same.") (emphasis in original). In ruling on a motion to transfer venue, the Court first determines whether the McAllen Division within the Southern District of Texas is a district in which the case could have been filed. *See In re Horseshoe Entm't,* 337 F.3d 429, 433 (5th Cir.) *cert. denied,* 124 U.S. 826 (2003). Undoubtedly, the McAllen Division is, like the Brownsville Division, a proper forum. *See* 28 U.S.C. § 1391(a)(2) (stating venue is proper in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. . . "). All parties reside in either Starr or Hidalgo County, Texas. *See* 28 U.S.C. § 1391(b) (indicating venue is proper in a judicial district where any defendant resides, if all defendants reside in the same State, where jurisdiction is not founded solely on diversity of citizenship). Both the Brownsville Division and McAllen Division within the Southern District of Texas, therefore, are venues where this case could have been originally filed as required by section 1404(a).

Determining whether a transfer of venue is proper requires the Court to analyze both private and public interest factors. None of these factors, however, are given dispositive weight. *See Action Indus., Inc. v. U.S. Fidelity & Guar. Co.,* 358 F.3d 337, 340 (5th Cir. 2004) (citing *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.,* 796 F.2d 821, 827 (5th Cir. 1986)). The public concerns are: (1) the administrative delay resulting from court congestion in the receiving court; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign laws. *Piper Aircraft v. Reyno,* 454 U.S. 235, 241 n.6 (1981). The private "convenience" concerns are: (1) the availability and convenience of witnesses and parties; (2) the location of relevant books and records; (3) the cost of obtaining attendance of witnesses and other trial expenses; (4) the place of the alleged

4

wrong; and (5) the availability of compulsory process to secure the attendance of witnesses. *Id.* The Plaintiff's choice of forum is given great deference. *See Lemery v. Ford Motor Co.*, 244 F. Supp.2d 720, 729 (S.D. Tex. 2002) (citations omitted).

As indicated above, the burden of demonstrating a transfer is warranted rests on the litigant asserting the motion. Defendants have presented only the barest of arguments in favor of their motion to transfer venue. They state, "not only do the Defendants and Plaintiff reside within the McAllen Division, but most if not all of the key witnesses or potential witnesses for trial will be located in that Division as well." Defs' Amended Motion to Transfer Venue, at p. 3 [Dkt. No. 9-1]. Defendants add no further elucidation to their arguments in their reply when they argue, "the potential witnesses, . . . are included on the face of Plaintiff's pleadings, [and] include the Hidalgo County District Attorney and members of the Hidalgo County Sheriff's Department." Defs' Reply, at p. 2.

Courts generally give the convenience of key witnesses the most weight in ruling on a motion to transfer venue. *See Chretien v. Home Depot U.S.A., Inc.*, 169 F. Supp. 2d 670, 673 (S.D. Tex. 2001). "At an absolute minimum, [the moving party] must identify key witnesses and provide a brief summary of their likely testimony in an effort to demonstrate to the Court why it would be inconvenient for them to testify in [Brownsville]." *Id.* (citations omitted). Defendants have provided no summary, brief or otherwise, to describe the likely testimony of *key* witnesses. Additionally, the McAllen and Brownsville Division courthouses are only approximately 59 miles apart. Because the residency of key, non-party witnesses is not described on the face of the complaint, the Court does not know where these witnesses reside. Thus, while certain witnesses may work in Hidalgo County, the Court is left to speculate whether they may in fact live in a town or city equidistant from both courthouses, or even closer to the Brownsville courthouse. Defendants have made no arguments, nor likely could they, suggesting specific witnesses would be substantially less inconvenienced by attending trial in McAllen than they are by traveling to Brownsville. The Court is not persuaded that the convenience of key witnesses warrants a transfer of venue.

Although the place of the alleged wrong is in Hidalgo County, which is the same

5

county in which the McAllen Division is located, there are no other mitigating factors supporting a transfer. Defendants have provided the Court with no evidence or argument that this case would involve a multitude of documents that cannot be as easily transported to McAllen as they can to Brownsville. Nor would the location of books and records likely be of paramount importance in a case based on alleged employment retaliation. Further, given the close proximity of both cities, trial expenses would likely be affected minimally, if at all, and Defendants again provide no information regarding expenses and costs connected with trying the case in Brownsville over McAllen. Given the great deference afforded Plaintiff's decision to litigate the case in the Brownsville Division, the Court is presented with no evidence or argument that merits disturbing Plaintiff's choice of forum. *See, e.g., Peteet*, 868 F.2d at 1436. Defendants state Plaintiff has a subjective belief that he will be subjected to an unfair trial in the McAllen Division. Whether Plaintiff's beliefs are founded or not, this Court need not disregard Plaintiff's choice of forum. Defendants hint at Plaintiff's forum shopping as a reason to grant the motion to transfer venue. Plaintiffs always have the option of shopping for a forum with the most favorable law or judicial climate. *See Ferens v. John Deere Co.*, 494 U.S. 516, 527 (1990). The relevant concern is whether this Court has proper venue. Because both the Brownsville and McAllen Divisions are proper venues in which to bring this case, in the absence of other mitigating factors listed above, the Court will respect Plaintiff's forum choice and retain this action in its discretion.

The Court **DENIES** Defendants' Amended Motion to Transfer Venue [Dkt. No. 9-1].

### III. **Motion to Dismiss**

#### A. **12(b)(6) Standard**

A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted." *Kennedy v. Tangipahoa Parish Library Bd. of Control*, 224 F.3d 359, 365 (5th Cir. 2000); *Lowrey v. Texas A & M University System*, 117 F.3d 242, 247(5th Cir. 1997) (quoting *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)). Fifth Circuit law dictates that a district court must

accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). *See also Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). A complaint will not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *See also Baton Rouge Bldg. & Constr. Trades Council AFL-CIO v. Jacobs Constructors, Inc.*, 804 F.2d 879, 881 (5th Cir. 1986). The Fifth Circuit has held, however, that dismissal is appropriate "if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (citation omitted).

### B. Property Interest Claim

In his original complaint, Plaintiff alleges Defendants violated his protected property interest guaranteed by the Fourteenth Amendment when he was terminated without any meaningful due process. Plaintiff states he

> had a protected due process property interest in his continued employment and was never given any meaningful due process before or after his termination. In taking the aforesaid actions, the Defendants, acting under color of statue, regulation, custom, usage of the laws of the State of Texas, within the meaning of 42 U.S.C. § 1983 and § 1985, violated the Plaintiff's rights guaranteed under the Constitution.

Pl's Original Cmplt. ¶ 4.2. In Plaintiff's response to Defendants' Motion to Dismiss, he states: "In this case, Plaintiff believed, based on representations made to him, he would only be fired for cause. In addition, there are specific police department policies which reference City Municipal Codes that provide for a pre-termination due process hearing." Pl's Response, at p. 2, ¶ 4.

A section 1983 claim requires the Plaintiff to prove: (1) a deprivation of a right secured by the Constitution and laws of the United States, and (2) a deprivation of that right by the defendant acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). When a plaintiff asserts a section 1983 claim alleging a due process violation, he "must first identify a life, liberty, or property interest protected by the Fourteenth Amendment and then identify a state action that resulted in a deprivation of

that interest." *Blackburn*, 42 F.3d at 935 (citations omitted); *see also American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). Property interests entitled to constitutional protection are defined by sources beyond the Constitution. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *Perry v. Sindermann,* 408 U.S. 593, 601 (1972) (quoting *Roth*, 408 U.S. at 577). "[P]roperty interests," the Supreme Court has said, "are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." *Perry,* 408 U.S. at 602, n. 7. (internal quotation marks and citation omitted). An individual is protected by the Fourteenth Amendment only if he can show both "(1) a deprivation, or intrusion upon, a property right or liberty interest, and (2) that the public employer's termination of that interest was arbitrary or capricious." *Gaumond v. City of Melissa*, 227 F. Supp. 2d 627, 631 (E.D. Tex. 2002) (citing *Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993)); *see also Kelleher v. Flawn*, 761 F.2d 1079, 1086 (5th Cir. 1985) ("[I]n order to recover under the Fourteenth Amendment in a § 1983 action, a plaintiff must demonstrate that [he] was deprived of a liberty or property interest and that [he] was not afforded adequate procedural protection prior to or following the deprivation."). The Court need not address both prongs if Plaintiff cannot demonstrate he has a property interest in his employment. *Gaumond*, 227 F. Supp. 2d at 631 n.2.

To effectively assert a due process claim in the public employment context, a plaintiff must demonstrate that he has a clearly established property interest in his employment. *Schultea v. Wood*, 27 F.3d 1112, 1116 (5th Cir. 1994), *reh'g en banc*, 47 F.3d 1427 (5th Cir. 1995); *Moulton*, 991 F.2d at 229. The Court must consult Texas law to determine whether a property right was created. *Moulton*, 991 F.2d at 230. As an employment-at-will state, absent a specific contract to the contrary, employment is terminable at will by either party. *Id.* Plaintiff must therefore demonstrate an express or implied contract existed. *Id.* In the absence of such a contract, Plaintiff must demonstrate that an ordinance, city code, city charter, or other such potential creators of a property interest. *See Schultea*, 27 F.3d at 1116 n.4.

8

Plaintiff contends there are "specific police department policies which reference City Municipal Codes that provide for a pre-termination due process hearing." Pl's Response, at p. 2. Plaintiff does not argue or even suggest the municipal codes contain language stating the police chief could be removed from his position only "for cause." Furthermore, policies or codes that possibly provide for pre-termination hearings, do not themselves grant the Plaintiff a property interest in his public employment under the Due Process Clause of the Fourteenth Amendment. Without a property interest, an agency's failure to follow its own policies does not establish a due process violation. *See Rogan v. Lewis*, 875 F.Supp. 956, 964 (S.D. Tex. 1997) (citing *Franceski v. Plaguemines Parish Sch. Bd.*, 772 F.2d 197, 199, 200 (5th Cir. 1985)). The Fifth Circuit has clearly stated that "absent 'termination for cause' language, [charters that lack this language] create no property interest." *Schultea*, 27 F.3d at 1116; *see also Moulton*, 991 f.2d at 230-31; *Henderson v. Sotelo*, 761 F.2d 1093, 1096-97 (5th Cir. 1985) (addressing similar charter provisions to those examined in *Schultea*). Nor does Plaintiff's belief that he can only be terminated for cause, "based on representations made to him," create an oral agreement sufficient to entitle Plaintiff to a property interest in his public employment and due process rights under the Constitution. *See Muncy v. City of Dallas, Tex.*, 335 F.3d 394, 399 n.2 (5th Cir. 2003); *Schultea*, 27 F.3d at 116.

The dilemma that the Court faces is that despite the fact that it appears Plaintiff cannot demonstrate he has a property interest, Plaintiff in part claims his property interest emanates from "specific police department policies which reference City Municipal Codes that provide for a pre-termination due process hearing." These policies are not presently before the Court, nor has Plaintiff cited in his response to the specific City Municipal Codes that he understands to have granted him a property interest and thus entitlement to constitutional due process procedures. *See generally Muncy*, 335 F.3d 394, 399 (5th Cir. 2003); *McDonald v. City of Corinth, Tex.*, 102 F.3d 152, 154 (5th Cir. 1996) (citing *Perry v. Sindermann*, 408 U.S. 593, 601-02 (1972)). Thus, the Court is unable to conduct a full review or analysis of the policies and City Code provisions Plaintiff claims grant him a property interest. Nevertheless, Plaintiff

9

explicitly references an unidentified section of the City Code that "provides for a pre-termination due process hearing" for his allegation that he possesses a property interest in continued employment. Assuming Plaintiff's allegations are true, as discussed above, a requirement that the City provide for a pre-termination hearing does not itself create a property interest. The Court, therefore, **DISMISSES without prejudice** Plaintiff's Due Process claims against all Defendants, and **GRANTS** Defendants' Motion to Dismiss Plaintiff's due process property interest claim. In the event that Plaintiff has not pled his best case, he may seek leave to amend his complaint and reassert a more fleshed out due process claim. *See Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986); *Brown v. Texas A & M Univ.*, 804 F.2d 327, 334 (5th Cir. 1986) ("the liberal pleading and amendment standards established by the Federal Rules of Civil Procedure mandate that we remand to allow [the plaintiff] to have another opportunity to plead a cognizable case, if such a case can be made.").

### C. Liberty Interest Claim

Plaintiff alleges in his complaint that prior to his termination, the Mayor began spreading rumors that Plaintiff was tampering with evidence, and that after his termination, the Mayor "eluded" [sic] to Plaintiff's misbehavior, which included rumors that Plaintiff was terminated as a result of "stealing, drug [sic] and possession of pornographic materials." Pl's Cmplt. ¶ ¶ 3.9, 3.14, 3.16. Plaintiff asserts in his complaint that this kind of "blackballing" by Defendants has adversely affected his employment prospects in the community. Plaintiff alleges he was not given an adequate opportunity to clear his name, although he requested such a hearing. Additionally, Plaintiff broadly argues in his response to Defendants' Motion to Dismiss that Defendants denied him a liberty interest protected under the Due Process Clause of the Fourteenth Amendment because "statements were made that accused Plaintiff of being derelict in his duty and dishonesty." Pl's Response, at p. 2.

"The liberty protected by the due process clause encompasses an individual's freedom to work and earn a living." *Wells v. Doland*, 711 F.2d 670, 676 (5th Cir. 1983). The absence of a protected property interest does not preclude a finding that Plaintiff

10

has a protected liberty interest that Defendants infringed. *Id.* at 676. "It is now beyond any doubt that discharge from public employment under circumstances that put the employee's reputation, honor, or integrity at stake gives rise to a liberty interest under the Fourteenth Amendment to a procedural opportunity to clear one's name." *Id.* A name-clearing hearing, however, is not automatically required by the Constitution when a liberty interest is at stake. Rather, a Plaintiff must establish that the:

> charges against him rise to a such a level that they create a "badge of infamy" which destroys [his] ability to take advantage of other employment opportunities. Additionally, the claims must be false and the claimant must show that damage to his reputation and employment opportunities has in fact occurred.

*Farias v. Bexar County Bd. of Trustees for Mental Health Mental Retardation Services*, 925 F.2d 866, 877-78 (5th Cir. 1991) (citing *Evans v. City of Dallas*, 861 F.2d 846, 851 (5th Cir. 1988)); *see also Campos v. Guillot*, 743 F.2d 1123, 1125 (5th Cir. 1984) (citing *Board of Regents v. Roth*, 408 U.S. 564, 573 (1972)). Damage to a person's reputation is not alone a liberty or property interest protected by the Constitution. *See Paul v. Davis*, 424 U.S. 693, 711 (1976). Rather, reputation must be attacked in connection with the termination of employment. *See id.* at 710. The charges, however, need not actually cause the discharge. *See Owen v. City of Independence*, 445 U.S. 622, 633 n.13 (1980). The charges must be more than simply adverse, and must "blacken [the Plaintiff's] good name or impair his employment opportunities." *Wells v. Hico Indep. Sch. Dist.*, 736 F.2d 243, 256 n.16 (5th Cir. 1984), *cert. denied*, 473 U.S. 901 (1985). Finally, the discharge must involve specific defamatory charges in order to raise a liberty interest. *See Rosenstein v. City of Dallas*, 876 F.2d 392, 399 n.3 (5th Cir. 1989), *aff'd*, 901 F.2d 761 (5th Cir.) (en banc), *cert. denied*, 498 U.S. 855 (1990). "Only if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination is such a hearing required." *Codd v. Velgar*, 429 U.S. 624, 628 (1977).

In this case, Plaintiff has failed to properly allege facts that if true would support all elements of a liberty interest claim. *Blackburn*, 42 F.3d at 931 ("'Dismissal is proper

11

if the complaint lacks an allegation regarding a required element necessary to obtain relief.'") (citation omitted). To succeed on a section 1983 claim for the denial of a name-clearing hearing, Plaintiff must prove seven elements: (1) he was discharged, (2) the stigmatizing charges were made against him in connection with the discharge, (3) the charges were false, (4) he was not provided an adequate opportunity to be heard prior to his discharge, (5) the charges were made public, (6) he requested a hearing to clear his name, and (7) the City refused his request to be heard in a meaningful way. *See Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000); *Rosenstein*, 876 F.2d at 395. Plaintiff need not use the term "name-clearing" in his request for a hearing. *Rosenstein*, 876 F.2d at 396. As the Court previously stated, property and liberty interest claims under the Fourteenth Amendment are separate legal claims, and as such neither is contingent upon the other. "[T]he process due . . . an individual [with a liberty interest] is merely a hearing providing a public forum or opportunity to clear one's name, not actual review of the decision to discharge the employee." *Rosenstein*, 876 F.2d at 395 (citing *Roth*, 408 U.S. at 573 n.12). "If a government employer discharges an individual under circumstances that will do special harm to the individual's reputation and fails to give that individual an opportunity to clear his name, however, the individual may recover damages under § 1983 for the deprivation of his liberty under the Fourteenth Amendment." *Id. (*citing *Owen*, 445 U.S. at 633 n.13). Without a property interest, however, the individual may not recover damages for the loss of his job. *See id.* at 397.

After a thorough review of Plaintiff's complaint and attached grievance letter, the Court determines Plaintiff has failed to state a claim for a liberty interest because he failed to allege that he requested a name-clearing hearing.[2] Plaintiff's counsel stated in his grievance letter:

> It is my understanding that your City has a policy with regard to adverse decisions concerning the officers. It is also my understanding that they are to

---

[2]The Court does not find that Plaintiff adequately pled the other required elements for a liberty interest claim. Rather, the Court finds Plaintiff's factual allegations to be particularly lacking on this element.

*grieve to you the adverse decision which, in this case, is a suspension, within five working days.*

*Crucial to my client's grievance with regard to this matter is that the suspension notice which my client has been given is totally without an explanation as to the reason for same. Typically, an officer is given an opportunity to review any complaint filed against him; and, afterwards, he is given a forum in which to address his grievance. This is so that both sides of an issue can be weighed and a reasonable opportunity to make a judicious decision can be made. Similarly, if there is an Internal Investigation against an officer, notice of such investigation and allegations should also be given to him, and a time frame for him to answer or to give his statement is given. Actions taken without proper notice violate the officer's due process rights. In this instance, my client has not been given any reason whatsoever for the suspension. This leads me to believe that there is some type of abuse of process, misconduct, official oppression or bad motivation behind the scenes by the City with regard to my client.*
. . .

*At this time, he requests that he be reinstated immediately and that any negative/false documentation which has been sent to his personnel file be removed immediately. Otherwise, my client requests a hearing in a public form (your next agenda meeting) to be informed as to the reason why he is being suspended with pay without any prior notice. This should bring embarrassment to the administration since the City's own notice procedures have not been followed. After such notice, then my client will request another meeting to present his response and determine your decision.*

Pl's Cmplt., Ex. B.

Plaintiff's counsel clearly does not reference any charges against him in this grievance letter. In fact, Plaintiff states he requests a hearing to determine the reason for his termination and to "grieve" his suspension. Plaintiff is not requesting a hearing to contest his suspension *on account of* or related to false charges against him. Plaintiff's counsel references the fact that "actions taken without proper notice violate the officer's due process rights." Nowhere in this letter does Plaintiff's counsel suggest, intimate, or otherwise imply that the request he makes is for a name-clearing hearing, versus a hearing to simply be informed of the reason for his suspension and to respond. Plaintiff does not even allege that after his termination he requested a name-clearing hearing

separate from this request for a public hearing to contest his suspension.[3]  In short, Plaintiff simply grafts onto his due process property claim a liberty interest claim that is not supported by the allegations, and is, indeed, refuted by the attached letter.  Plaintiff has actually pled himself out of a due process liberty interest claim.

Although Plaintiff need not explicitly request a name-clearing hearing, he must request the hearing in such a way that indicates he is both contesting charges lodged against him, and that these charges are false.  For example, in *Rosenstein*, the appellant wrote to the Dallas City Manager that "'[he] was fired from the Dallas Police Department for something that [he] did not do,' and he 'request[ed] an appeal from this decision.'"  *Rosenstein*, 876 F.2d at 396.  Nor does Plaintiff's request at all resemble the request made in *Owen v. City of Independence*, which request was held to be sufficient to state a liberty interest claim.  In *Owen*, the request for a name-clearing hearing stated:

> In spite of your recent investigation and your public statement given to the public press, your relief and discharge of me without a full public hearing upon written charges will leave in the minds of the public and those who might desire to have my services, a stigma of personal wrongdoing on my part.
>
> Such action by you would be in violation of my civil rights as granted by the Constitution and Congress of the United States and you would be liable in damages to me.  Further it would be in violation of the Missouri Administrative Procedure Act.
>
> May I have an expression from you that you do not intend to relieve me or in the alternative give me a written charge and specification of your basis for your grounds of intention to relieve me and to grant me a public hearing with a reasonable opportunity to respond to the charge and a right to be represented by counsel. [sic]

---

[3]Additionally, it is questionable whether Plaintiff has alleged that charges against him are in fact false.  Even if the Court infers that Plaintiff has made such an allegation by the fact that he references "totally false rumors," and by the fact that he has filed the current complaint, he clearly has not alleged that he declared certain stigmatizing statements were false to the City in a request for a name-clearing hearing after his termination.  *See, e.g., White v. Thomas*, 660 F.2d 680, 686 (5th Cir. 1977) (citing *Austin v. Board of Educ.*, 562 F.2d 446, 449 (7th Cir. 1977); *see also Codd v. Velger*, 429 U.S. 624, 627-28 (1977) (holding that in order to state a liberty interest claim, Plaintiff must challenge the truthfulness of the stigmatizing comments made about him).

*Owen*, 445 U.S. at 626 n.4

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's due process liberty interest claim, and **DISMISSES without prejudice** Plaintiff's due process liberty interest claim.  As stated earlier, Plaintiff may seek leave to amend his complaint if he has not pled his best case on this claim.

### D. 42 U.S.C. § 1985 Conspiracy to Interfere with Plaintiff's Civil Rights

The Court agrees with Defendants: Plaintiff's federal claims of "conspiracy to interfere with civil rights" is nebulous, ill-defined, and simply inadequate to withstand a motion to dismiss.  Should Plaintiff wish to replead this claim, he may seek leave from the Court to amend his complaint.  The Court admonishes Plaintiff, however, that he should *first* consult appropriate law before determining whether he can in good faith assert a violation of section 1985.  Additionally, Plaintiff must cite the specific section of 42 U.S.C. § 1985 under which he seeks redress.  Accordingly, the Court **DISMISSES without prejudice** Plaintiff's § 1985 claims against all Defendants.

### E. Texas Whistleblower Act

Pursuant to the Texas Government Code, "[a] state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority."  Tex. Gov't Code Ann. § 554.0035 (Vernon's Supp. 2004).   All Defendants except the City are entitled to dismissal of Plaintiff's Whistleblower Act claim because as a matter of law, individual employers or supervisors cannot be liable under the Act in a suit brought by a private party.  The Whistleblower Act "does not create a cause of action against employees of a public agency. Instead, the statute creates a cause of action against state local or governmental agencies." *Rodriguez v. Laredo Indep. Sch. Dist.*, 82 F.Supp.2d 679, 688 (S.D.Tex.2000), *reconsideration denied,* 143 F.Supp.2d 727 (S.D.Tex.2001); *accord Thompson v. City of Arlington, Tex.,* 838 F.Supp. 1137, 1153 (N.D.Tex.1993); *Texas Dep't of Human Servs. v. Green,* 855 S.W.2d 136, 142 (Tex.App.1993, writ denied).  *Cf.* Tex. Gov't Code Ann. § 554.008

15

(addressing suit by Attorney General or appropriate prosecuting attorney to collect civil penalty and limitation of liability of supervisor or other individual for civil penalty that, once assessed, is to be deposited into state treasury).

To prove a whistleblower claim, Plaintiff must allege and demonstrate that (1) he is a public employee; (2) he acted in good faith in making the report; (3) the report involved a violation of law by the agency or a public employee; (4) the report was made to an appropriate law enforcement authority; and (5) he suffered retaliation for making the report. *See* Tex. Gov't Code Ann. § 554.002; *Duvall v. Texas Dep't of Human Servs.*, 82 S.W.3d 474, 478 (Tex. App. –Austin 2001, no writ). Defendants argue that Plaintiff has not identified any violation of law reported to a law enforcement authority. Plaintiff in response argues the Texas Whistleblower Act does not require an actual violation of law, but rather requires that the employee believed a violation of law is or was occurring, and this belief must be reasonable in light of the employee's experience and training.

The Court agrees with Plaintiff that a person seeking relief under the Whistleblower Act need not prove a violation of the law actually occurred. Plaintiff, however, must show he believed the conduct reported violated the law. *See Wichita County, Tex. v. Hart*, 917 S.W.2d 779, 785-85 (Tex. 1996). The Texas Supreme Court adopted a definition of "good faith," which is: "(1) the employee believed that the conduct reported was a violation of law and (2) the employee's belief was reasonable in light of the employee's training and experience." *Id.* at 784. Additionally,

> [al]though an employee need not identify a specific law when making a report, and need not establish an actual violation of law, there must be some law prohibiting the complained of conduct to give rise to a Whistleblower claim. Otherwise, every complaint, grievance, and misbehavior could support a claim under the Act. Thus, to recover under the Act, an employee must have a good faith belief that a law, which in fact exists, was violated.

*Llanes v. Corpus Christi Indep. Sch. Dist.*, 64 S.W.3d 638, 642-43 (Tex. App. –Corpus Christi 2001, reh'g overruled, review denied).

Although Plaintiff did not cite a specific provision of Texas code to support his

16

contention that the Mayor was violating the law, Plaintiff explicitly alleges he reported to the Hidalgo County D.A. that the Mayor was "interfering with . . . police business" by "ordering the officers to conduct traffic stops and issue citations" to the Mayor's political opponents and those affiliated or associating with his political opponents.  If true, this allegation certainly states an abuse of power and discretion.  At this early stage of litigation, the Court cannot say Plaintiff has failed to state a claim under the Whistleblower Act.  The Court notes, however, that Plaintiff will ultimately need to identify which provisions of Texas code the Mayor's alleged actions would violate if true and which give rise to the whistleblower claim.  *See Llanes*, 64 S.W.3d at 642-43.  Additionally, pursuant to case law cited above, Plaintiff will need to demonstrate his good faith belief that the specific actions alleged violate a law in light of his experience as the police chief.

Accordingly, the Court **DENIES** Defendants' Motion to Dismiss Plaintiff's whistleblower claim against the City at this early stage of litigation.  But for the reasons cited above, the Court **DISMISSES with prejudice** Plaintiff's Whistleblower Act claim against all individual Defendants.

### F. Defamation of Character

Under Texas law there are two types of defamation: libel, involving the publication of a written defamatory statement about the Plaintiff to a third party, and slander, involving a defamatory statement made orally to a third party without legal justification.  *See Fields v. Keith*, 174 F. Supp. 2d 464, 473 (N.D. Tex. 2001), *aff'd*, 273 F.3d 1099 (5th Cir. 2001).  Plaintiff's defamation claim must allege facts demonstrating the Defendant: "(1) published a statement; (2) that was defamatory; (3) while acting with either actual malice, if the Plaintiff was a public official or public figure, or negligence, if the Plaintiff was a private individual, regarding the truth of the statement."  *Id.* (citing *WFAA-TV, Inc. v. McLemore,* 978 S.W.2d 568, 571 (Tex. 1998), *cert. denied*, 526 U.S. 1051 (1999)).  Some courts additionally require the Plaintiff to specifically allege the time, place, and recipient of the statement.  *See Garrett v. Celanese Corp.*, 2003 WL 22234917 at *4 (N.D. Tex. Aug. 28, 2003) (citing *Jackson v. Dallas Indep. Sch. Dist.*, 1998 WL 386158 at *5 (N.D. Tex.), *aff'd*, 232 F.3d 210 (5th Cir. 2000)).  Conversely,

17

other courts have noted that "[f]ederal courts have . . . consistently refused to require plaintiffs to set forth allegedly defamatory statements *en haec verbis*." *Barber v. Nationwide Communications, Inc.*, 1995 WL 940517 at *3 (N.D. Tex. May 30, 1995); *see also Advanced Logistical Support, Inc. v. Fritz Companies, Inc.*, 2003 WL 21459688 at *7 (E.D. La. June 18, 2003) (noting that Federal Rules of Civil Procedure, not state law, govern the adequacy of defamation claims, and thus these claims are subjected to the more relaxed pleading standards of Rule 8).

In this case, "Plaintiff sues individual Defendants for defamation of his good reputation due to the publication of false and non-privileged statements by the individual Defendants to third persons." Pl's Cmplt. ¶5.2. Plaintiff alleges "[t]he statements were all made in reference to Plaintiff's work performance, his professional integrity and other matters concerning his occupation and related to acts which accuse the Plaintiff of the commission of crimes and/or immoral and dishonest conduct." *Id.* Plaintiff alleges the Mayor began spreading rumors that Plaintiff was tampering with evidence. *See* Pl's Cmplt. ¶ 3.9. Additionally, Plaintiff alleges the Mayor told officers and community members that Plaintiff was unable to do his job. Finally, Plaintiff alleges that the Mayor "eluded [sic] to misbehavior on the part of the Plaintiff." Defendants argue Plaintiff fails to identify any defamatory statements, specify when the statements were published, or allege the falsity of the statements.

Although Plaintiff need not set forth verbatim the allegedly defamatory statements, the Defendants must have sufficient notice of the statements complained of so that they may defend themselves. *See Barber*, 1995 WL 940517 at *3. In the present case, Plaintiff's reference to the Mayor's statements is somewhat vague, and Plaintiff does not specify the third party to whom the statement was made, or identify the time and place of the statements. Plaintiff's allegation that the Mayor "eluded [sic] to misbehavior on the part of the Plaintiff" is just that–an indirect reference that lacks an allegation of a specific statement. On the other hand, Plaintiff makes reference to the Mayor's alleged statement that Plaintiff was tampering with evidence. Plaintiff states in his response to Defendants' Motion to Dismiss, and reiterated in oral argument during the initial pretrial conference, that he will ask for leave to amend his complaint and will

18

include more specific defamatory statements.

Despite the lack of complete clarity in Plaintiff's pleading, the Court cannot say that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46. Accordingly, the Court **DENIES** Defendants' Motion to Dismiss the defamation claim.[4]

### G. Intentional Infliction of Emotional Distress

Plaintiff may recover for intentional infliction of emotion distress if he proves that: (1) the Defendant acted intentionally or recklessly; (2) the Defendant's conduct was extreme and outrageous; (3) the Defendant's actions caused the Plaintiff emotional distress; and (4) the emotional distress suffered by the Plaintiff was severe. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995); *see also Standard Fruit & Vegetable Co. v. Johnson,* 985 S.W.2d 62, 65 (Tex.1998). In addition, "[a] claim for intentional infliction of emotional distress cannot be maintained when the risk that emotional distress will result is merely incidental to the commission of some other tort." *Id.* at 68. Accordingly, a claim for intentional infliction of emotional distress will not lie if emotional distress is not the intended or primary consequence of the defendant's conduct. *Id.* Extreme and outrageous conduct, as defined by the Restatement of Torts and adopted by the Supreme Court of Texas, is conduct that is "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (citing *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965))).

In the workplace or employment context, an intentional infliction of emotional distress claim is difficult to prove and few incidents will rise to the level of extreme and

---

[4]Plaintiff's counsel confirmed in oral argument during the initial pretrial conference that this claim is brought against the "individual Defendants," but not against the City, which is protected by immunity under the Texas Tort Claims Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2); *City of Hampstead v. Kmiec*, 902 S.W.2d 118, 122 (Tex. App.–Houston [1st Dist.] 1995, no writ) (intentional torts, such as defamation, do not fall within the scope of the waiver of immunity under the Texas Tort Claims Act). Plaintiff's claim for intentional infliction of emotional distress is also brought against the individuals only.

outrageous conduct. *See Durckel v. St. Joseph Hospital*, 78 S.W.3d 576, 586 (Tex. App. –Houston [1st Dist.] 2002, no pet.) (citing *e.g., Horton v. Montgomery Ward & Co.*, 827 S.W.2d 361, 369 (Tex. App. –San Antonio 1992, writ denied)). Even conduct such as wrongfully accusing a plaintiff of thievery and termination as a result was not extreme and outrageous conduct under Texas law. *See Diamond Shamrock Ref. & Mktg. Co. v. Mendez*, 844 S.W.2d 198 (Tex. 1992). Termination in violation of a whistleblower statute is not in itself extreme and outrageous conduct. *See Beiser v. Tomball Hosp. Auth.*, 902 S.W.2d 721 (Tex. App. –Houston [1st Dist.] 1995, writ denied). Nor is defamation itself sufficiently extreme and outrageous under Texas law so as to constitute intentional emotional distress. *See Tackett v. KRIV TV (Channel 26)*, 1994 WL 591637 at *2 (S.D. Tex., May 5, 1994). "Under Texas law, potentially defamatory statements, including those that are false, abusive, unpleasant, objectionable, or imply that the plaintiff is guilty of a crime, simply do not give rise to a cause of action for intentional infliction of emotional distress." *Id.* (citing *Schauer v. Memorial Care Sys.,* 856 S.W.2d 437, 451 (Tex.App.--Houston [1st Dist.] 1993, no writ.)).

In this case, Plaintiff has failed to allege facts showing "the existence of some conduct that brings ordinary employment disputes into the realm of extreme and outrageous behavior." *Durckel*, 78 S.W.3d at 588 (citing *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 613 (Tex. 1999)). In fact, Plaintiff's claim does nothing more than vaguely state the "individual Defendants' actions in the nature and extreme and outrageous conduct were intentional and reckless . . . " Pl's Cmplt. ¶ 5.3. Plaintiff again indicates he will seek leave to add details of the intentional infliction of emotional distress claim. *See* Pl's Response to Defs' Motion to Dismiss, at p. 3.

The Court **DISMISSES without prejudice** Plaintiff's claim for intentional infliction of emotional distress, but Plaintiff may amend his complaint should he determine he can appropriately allege facts that if proven give rise to this claim.

### H. Civil Conspiracy

Plaintiff alleges the individual defendants "agreed to circumvent the requirements of Texas law for public officials concerning open meetings, and discussion of matters

20

which concern municipal business.  The individual Defendants violated State law in order to further violate the Plaintiff's own property rights and interests . . . " Pl's Cmplt. ¶ 5.4.  Civil conspiracy under Texas law requires: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983).

Defendants mistakenly argue that the individual defendants cannot conspire with each other because a corporation or organization cannot conspire with itself, and individual defendants are analogous to individual employees of a corporation.  *See* Defs' Motion to Dismiss, at p. 12.  "[A] conspiracy may be established where individual defendants are named and those defendants act outside the scope of their employment for personal reasons." *Kinsey v. Ryan*, 1998 WL 920329 at *6 (N.D. Tex. Dec. 31, 1998) (citing *Swann v. City of Dallas*, 922 F.Supp. 1184, 1207 (N.D. Tex. 1996), *aff'd* 131 F.3d 140 (5th Cir. 1997)).

"A defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Tilton v. Marshall,* 925 S.W.2d 672, 681 (Tex. 1996).  Plaintiff alleges only that Defendants "agreed to circumvent the requirements of Texas law for public officials concerning open meetings, and discussion of matters which concern municipal business." Pl's Cmplt. ¶ 5.4.  Plaintiff has not identified an underlying tort that supports his claim for civil conspiracy. *See Grizzle v. Texas Commerce Bank,* 38 S.W.3d 265, 285 (Tex. App.–Dallas, 2001) ("[b]ecause breach of contract is not a tort, it will not support a civil conspiracy.").  Stated differently, "'civil conspiracy consists of acts that would have been actionable against the conspirators individually.'" *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1194 (5th Cir. 1995) (quoting *International Bankers Life Ins. v. Holloway,* 368 S.W.2d 567, 581 (Tex.1963).  Simply alleging that certain requirements exist under Texas law that were not followed, which in this case the Court is left to speculate must relate to the Open Meetings Act, without more, does not allege an actionable underlying tort.  Furthermore, this kind of allegation does not require discovery, but rather legal argument identifying an underlying tort, which can

21

easily be rectified through amendment of Plaintiff's claims. Finally, Plaintiff does not allege the Defendants acted outside the scope of their employment for personal reasons, which would be required to sustain a civil conspiracy claim against individual Defendants who were employees of Sullivan City.

In light of the above correctable deficiencies, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's civil conspiracy claim, and **DISMISSES without prejudice** Plaintiff's civil conspiracy claim.

### IV. Qualified Immunity

Defendants have raised the qualified immunity defense for both of the federal claims raised in their Motion to Dismiss. Because the Court dismisses Plaintiff's due process property and liberty claims, it is unnecessary to reach the issue of qualified immunity at this point. Plaintiff's First Amendment Retaliation claim remains and the Court has not addressed this claim because Defendants did not raise it in their Motion to Dismiss.

### V. Defendants' Motion for More Definite Statement

Along with their Motion to Dismiss, the Defendants file an Alternative Motion for More Definite Statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure. Rule 12(e) states: "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement . . . ." Fed. R. Civ. P. 12(e). The Federal Rules of Civil Procedure do not contemplate the pleading of all relevant facts in intimate detail. See Mitchell v. E-Z Way Towers, Inc., 269 F.2d 126, 132 (5th Cir.1959) ("In view of the great liberality of Fed. R. Civ. P. 8, permitting notice pleading, it is clearly the policy of the Rules that Rule 12(e) should not be used to frustrate this policy by lightly requiring a plaintiff to amend his complaint which under Rule 8 is sufficient to withstand a motion to dismiss."). "Consequently, a motion for more definite statement is generally disfavored and is used to provide a remedy only for an unintelligible pleading rather than a correction for lack of detail." Frazier v. Southeastern Penn. Transp. Auth., 868 F.Supp. 757, 763 (E.D. Pa. 1994). A Rule 12(e) motion does not serve as a substitute for discovery. See Mitchell, 269 F.2d at

22

132; *see also Bryant ex rel Bryant Family Trust v. Mueller*, 2004 WL 741321 at *3 (N.D. Tex. Apr. 6, 2004). On the other hand, "[i]f a pleading fails to specify the allegations in a manner that provides sufficient notice," a Rule 12(e) Motion for More Definite Statement may be appropriate. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002). In deciding whether to grant a Rule 12(e) motion, the trial judge is given considerable discretion. *Old Time Enters. v. Int'l Coffee Corp.*, 862 F.2d 1213, 1217 (5th Cir. 1989) (citations omitted) (reviewing orders made pursuant to a motion for more definite statement under abuse-of-discretion standard); *Newcourt Leasing Corp. v. Regional Bio-Clinical Lab, Inc.,* 2000 WL 134700 at *1 (E.D. La.2000).

Defendants list 14 separate interrogatory-like questions to which they wish the Plaintiff to respond. Among these are requests that Plaintiff identify the legal and factual basis that Plaintiff believes support his position that he has a property interest, how each Defendant allegedly violated Plaintiff's liberty interest, how Plaintiff may maintain a cause of action under the Texas Whistleblower Act, and how "Plaintiff may maintain a cause of action for civil conspiracy, including how these Defendants had a meeting of the minds, and identify the unlawful, overt acts allegedly committed by these Defendants," and many other requests. Defs' Motion for More Definite Statement, at p. 16

As discussed in this order, Plaintiff has generally met the liberal pleading burden under Federal Rule of Civil Procedure 8(a) for the remaining claims. *See* Fed. R. Civ. P. 8(a); *see also Conley*, 355 U.S. at 47. Those claims not meeting the liberal pleading requirements may be repled. The Court will not allow Defendants to gather information through a "more definite statement" that is more appropriately obtained through discovery. Accordingly, the Court **DENIES** Defendants' Motion for a More Definite Statement in which they request Plaintiff provide answers to enumerated questions.

Defendants also alternatively request that this Court stay all discovery until the Court makes a determination concerning the Defendant's entitlement to qualified immunity. After dismissal of Plaintiff's due process claims, there are currently no qualified immunity claims before the Court. As a result, the Court **DENIES as moot** Defendants' alternative request to stay discovery pending the resolution of Defendants'

entitlement to qualified immunity.  The Court will enter a scheduling order.

## V. **Conclusion**

The Court **DENIES** Defendants' First Amended Motion to Transfer Venue [Dkt. No. 9-1].  Having addressed each claim raised in Defendants' Motion to Dismiss, the Court **GRANTS in part and DENIES in part** Defendants' Amended Motion to Dismiss [Dkt. No. 9-2].  The Court **DENIES** Defendants' Amended Motion for More Definite Statement [Dkt. No. 9-3] and Defendants' Amended Motion to Stay Discovery [Dkt. No. 9-4].  The Court **DENIES as moot** Defendants' Original Motions to Transfer Venue, Dismiss, for More Definite Statement, and to Stay, which have been superceded by their amended motions [Dkt. Nos. 8-1, 8-2, 8-3, 8-4].


DONE at Brownsville, Texas, this 4th day of August 2004.


Hilda G. Tagle
United States District Judge