

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of T....
F.....

AUG 0 5 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| MARIO ALANIZ, JR. and | § | |
| BLAS GONZALEZ | § | |
|     Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | |
| THE CITY OF SULLIVAN CITY, TEXAS | § | |
| GUMARO FLORES, In His Individual and | § | CIVIL ACTION NO. B-04-040 |
| Official Capacity as Mayor of Sullivan City, | § | |
| REYNALDO RUIZ and | § | JURY DEMANDED |
| FROILAN RAMIREZ, In their Individual | § | |
| and Official Capacities as Commissioners | § | |
| and ROLANDO GONZALEZ, In His | § | |
| Individual and Official Capacity as | § | |
| City Manager | § | |
|     Defendants. | | |

## PLAINTIFFS' AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

    NOW COME, MARIO ALANIZ, JR and BLAS GONZALEZ., hereinafter referred to as Plaintiffs, complaining of the CITY OF SULLIVAN CITY, TEXAS, GUMARO FLORES, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS MAYOR OF THE CITY OF SULLIVAN CITY, REYNALDO RUIZ AND FROILAN RAMIREZ, IN THEIR INDIVIDUAL AND OFFICIAL CAPACTIES AS COMMISSIONERS AND ROLANDO GONZALEZ, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS CITY MANAGER, hereinafter called by name or collectively as Defendants, and for such cause of action, would respectfully show unto the Court as follows:

1. **PARTIES**

    1.1    Plaintiff, MARIO ALANIZ, JR., is an individual residing in Starr County, Texas.

    1.2    Plaintiff, BLAS GONZALEZ, is an individual residing in Starr County, Texas.

    1.3    Defendant, GUMARO FLORES, is an individual who was previously served.

1.4    Defendant, SULLIVAN CITY, TEXAS, is a political subdivision organized pursuant to the Constitution and Laws of the State of Texas. The Defendant City is a municipality chartered by the State of Texas, who was previously served.

1.5    Defendants, REYNALDO RUIZ and FROILAN RAMIREZ, are individuals who were previously served.

1.6    Defendant, Rolando Gonzalez, is an individual who was previously served.

2.    **JURISDICTION**

2.1    Jurisdiction is proper against Defendants CITY OF SULLIVAN CITY, TEXAS, GUMARO FLORES, REYNALDO RUIZ, FROILAN RAMIREZ, and ROLANDO GONZALEZ pursuant to 28 U.S.C. § 1331 and § 1343.

2.2    Jurisdiction is also proper as to Defendant Gumaro Flores pursuant to 28 U.S.C. §1343 (a) (1), (2) and §1367. Defendant Gumaro Flores  conspired with other Defendants and persons to deprive the Plaintiff of his constitutional rights and privileges and the remaining claims against him are so related to the federal claims that they form part of the same case or controversy.

3.    **FACTUAL ALLEGATIONS**

3.1    The incidents giving rise to this cause of action are the results of a series of illegal and discriminatory occurrences that happened in the City of Sullivan City and in the Police Department of the City of Sullivan City, Hidalgo County, Texas.

3.2    The Plaintiff, Mario Alaniz, Jr., was employed with the City of Sullivan City as Chief of Police from July 27, 2002 until his unlawful termination on December 15, 2003.

3.3    The Plaintiff, Blas Gonzalez, was employed at different times with the City of Sullivan City in various positions related to the police department. He was unlawfully terminated, verbally, and after letters requesting a hearing on his grievance, he received a letter advising that the City would not grant him a hearing.

3.4    In late November 2003, the Plaintiff Mario Alaniz, through his Sergeant, Blas Gonzalez, started reporting violations of law which had been occurring in the City of Sullivan City to the Hidalgo County D.A's office, and to other law enforcement officials including the FBI. Specifically, the Plaintiff informed the City Manager and later the D.A.'s office that there were problems which included but were not limited to problems between the department personnel and

the Mayor with respect to the Mayor interfering with the police business and ordering the officers (1) to conduct traffic stops and issue citations to whoever was observed making contact with the Mayor's political opponents and counseling (2) change citations to warnings for friends and political allies. Plaintiff reported to them facts which constituted the Defendants' official oppression against the officers. Plaintiff Mario Alaniz had also complained to the Mayor himself that he should not interfere so much in police business/duties, with respect to the officers and Plaintiff himself. He attempted to discuss some of the matters referred to above by requesting that his concerns be placed on the agenda, but his requests were ignored.

    3.5    The Mayor began to conspire with now Chief (then Assistant Chief Hernan Guerra) and others to talk bad about the Plaintiff to the other officers and to attempt to undermine him. When Plaintiff reported having problems with the Assistant Chief, the Mayor and others protected the Assistant Chief.

    3.6    Plaintiff Blas Gonzalez had also complained to the administration directly about the Mayor's oppressive behavior, and about how Hernan Guerra was pressuring personnel to sign a letter of no confidence against Mario Alaniz. Hernan Guerra even told Plaintiff Blas Gonzalez that City Manager, Rolando Gonzalez, had instructed him to make the letter "juicy" by adding that Mario Alaniz was not doing his job. Plaintiff Blas Gonzalez prepared a statement which was submitted to the D.A's office to support Plaintiff Mario Alaniz's complaints.

    3.7    The Mayor was informed of the Plaintiffs' complaints by the D.A., Rene Guerra.

    3.8    The Mayor immediately retaliated and informed persons, that he would get back at Plaintiff Mario Alaniz by taking away his unit, demoting Plaintiff, and not allowing him to do outside security work.

    3.9    Later that day, policies were revised and most of what was at first considered rumors became true. Also later in that day the Mayor and Defendant Gonzalez confronted Plaintiff and the Mayor said he had discussed things with his son, State Representative Kino Flores, who said the Mayor could "get rid of Plaintiff". The Mayor also informed Plaintiff that he knew of Plaintiff's complaint to the D.A. by the D.A. himself, Rene Guerra. He said that nothing would happen to him because he had connections, implying he was above the law. The Mayor then told everyone his plan would be to suspend Plaintiff Mario Alaniz. He also told Plaintiff Blas Gonzalez that he knew that

Blas Gonzalez was the whistleblower, but that his job would continue doing the work as Sergeant while at the same time doing his work as warrant officer, presumably so someone else could "keep an eye" on him.

3.10    On December 7, 2003, Plaintiff, Mario Alaniz, was called to his residence by a fellow officer that he was on his way to Plaintiff's home to deliver a letter of suspension. The letter, attached hereto as Exhibit "A," does not state a reason for the suspension.

3.11    By then, the Mayor was telling everyone that Rene Guerra, the D.A., had told the Mayor that nothing would be done on the D.A.'s part, and that Plaintiff, Mario Alaniz, should be fired. Furthermore, the Mayor began spreading rumors of evidence being tampered with by the Plaintiff, the City's Chief of Police.

3.12    On December 8, 2003, Plaintiff, Mario Alaniz, met with and turned in information to the Hidalgo County Sheriff's office regarding the matters stated above.

3.13    On December 11, 2003, Plaintiff, Mario Alaniz, by and through his attorney grieved the suspension as shown by copy of letter attached hereto as Exhibit "B". No notice was given to Plaintiff's attorney, in response; but on December 15, 2003 Plaintiff was informed by persons other than the Defendant's herein that there was a meeting at City Hall to discuss the status of Chief of Police.

3.14    At that meeting, in front of many people and the community who were there in support of Plaintiff Alaniz, Plaintiff was not allowed to speak on his behalf. After a brief executive session meeting, Plaintiff was fired without reason and against policy and law.

3.15    The Mayor's son, Representative Kino Flores, attended the meeting in support of his father. He coached his father at the meeting. After the meeting, he told officers and persons present that the Plaintiff was not able to do his job and that he and his father had to do it for Plaintiff.

3.16    After Plaintiff Mario Alaniz was terminated, Plaintiff Blas Gonzalez was given a memo that his position would be terminated. Plaintiff Blas Gonzalez was surprised as he had been promised that though he would work as a warrant office he would be working as a police officer with the department when there were openings. He was informed that he was not able to "look the other way."

3.17    After that memo, Plaintiff Blas Gonzalez met with Representative Kino Flores who

told him that his "dad" told him that the reason he was fired was because he had gone against him. After that meeting Hernan Guerra and the Mayor told Plaintiff Blas Gonzalez that he would be given a second chance even though Plaintiff had told them that Plaintiff Alaniz had been wrongfully fired.

3.18    On March 5, 2002, Hernan Guerra and the Mayor informed Plaintiff Blas Gonzalez again that Mario Alaniz was going to sue the City and that Plaintiff Blas Gonzalez was the "whistleblower."    On March 8, 2004 the Mayor and City Manager verbally advised Plaintiff of Mario Alaniz's suit.  Plaintiff Blas Gonzalez was informed verbally that job was abolished.  That same day Hernan Guerra taunted Plaintiff Blas Gonzalez by asking him if "Escalon" (the Sheriff who lost the election and to whom Plaintiffs had also complained) had already hired him.  The Mayor and Hernan Guerra were outspoken supporters of Escalon's opponent and they knew that Blas Gonzalez was not.  In fact Hernan Guerra told Plaintiff some time before to be a "yes man" to the Mayor with regard to the Mayors political supporters.

3.19    After Plaintiff Blas Gonzalez' termination, an officer, Hernan Guerra, and the City Manager received raises, and shortly thereafter (within 4 days) a new police officer was hired for the police department.

3.20    Plaintiff Blas Gonzalez immediately requested a hearing to grieve his termination. His request was ignored.  He again requested a hearing and was eventually informed that there was not going to be a hearing for his grievance regarding his termination, something which the policy and procedure manual and due process would allow.

3.21    Plaintiff Mario Alaniz has been told by numerous persons that the Mayor has spoken to them about Plaintiff, sometimes in social gatherings in front of others, and that the Mayor eluded to misbehavior on the part of Plaintiff such as stealing from the evidence room to place Plaintiff in false light.

3.22    Plaintiff Blas Gonzalez has been told by other officers and Citizens that certain persons in the police department have subsequently been spreading rumors about him in attempts to find out negative things about him.

3.23    Plaintiffs who live in Sullivan City, has been effected by the conspiracy of the Defendants and their negative recommendations with regard to job prospects by the Defendants' "blackballing."

3.24    Plaintiffs and their families have been adversely effected.  For example, Plaintiff Mario Alaniz' parents are being told about rumors regarding their son's termination as a result of stealing, drug and possession of pornographic materials at the office, totally false rumors. Plaintiff's child is being told by other children in school that Plaintiff is "a crook".

3.25    The City has hired Herman Guerra, Mario Alaniz's Assistant Chief and a man of lesser credentials who is not qualified to be Chief, as Chief of Police because he is a "yes man" to the Mayor.  The City hired another officer to replace Blas Gonzalez, of lesser credentials than Blas Gonzalez.

3.26    The Mayor has been so bold as to tell persons that Plaintiffs were fired because they were "whistleblowers."

## 4.    SECTION 1983 AND 1985 CIVIL RIGHTS VIOLATIONS

Plaintiffs incorporate the above fact paragraphs herein for all purposes.

## 4.1    FREE SPEECH RETALIATION

The conduct of Defendants CITY OF SULLIVAN CITY, TEXAS, GUMARO FLORES, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS MAYOR OF THE CITY OF SULLIVAN CITY, REYNALDO RUIZ AND FROILAN RAMIREZ, IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES AS COMMISSIONERS AND ROLANDO GONZALEZ, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS CITY MANAGER complained of, constituted discrimination on the basis of Plaintiffs' speech and is protected by the First Amendment.  Plaintiffs made comments regarding a matter of public concern and reported violations of law by the Defendants to state and federal law enforcement authorities.  The Plaintiffs further made critical comments about the conspiracy of secrecy and failure of the Defendants to follow personnel policies which also involved matters of public concern.  As a result, Plaintiffs were fired for exercising their First Amendment rights and this was the motivating factor.

## 4.2    FAILURE TO PROVIDE DUE PROCESS

The Plaintiffs also have a protected due process property interest in their continued employment and were never given any meaningful due process before or after their termination.  In taking the aforesaid actions, the Defendants, acting under color of statue, regulation, custom, usage of the laws of the State of Texas, within the meaning of 42 U.S.C. § 1983 and § 1985, violated the

Plaintiffs' rights guaranteed under the Constitution.

### 4.3    VIOLATION OF PROTECTED LIBERTY INTEREST

Defendant Gumaro Flores in collusion and conspiracy with the other Defendants, denied the Plaintiffs due process for their protected liberty interest. Comments were made publicly casting shadows over the reputation of the Plaintiffs as well as inferring acts of dishonesty and incompetency on them. The Plaintiffs were never provided a forum to clear their name. Defendants and Kino Flores publicly made allegations of corruption relating to the Plaintiffs. Plaintiffs were denied their liberty interest in their reputation.

### 4.4    CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

Plaintiffs allege that the officials who participated in the wrongful acts were lawmakers or policy makers with the City of Sullivan City whose actions may fairly be said to be the actions of the City. Defendants using the authority and weight of their office, abused their public trust to cast aspersions and defame Plaintiffs and deny them of their protected liberty interests. All of the Defendants acted in collusion and conspired to deprive the Plaintiffs of their constitutionally protected rights, and in violation of 42 U.S.C. §1983 and §1985. The Defendants intended to violate the Plaintiffs' constitutional rights for exercising their free speech, depriving them of their property interests without due process and their liberty interest in their reputation.

### 5.    STATE LAW CLAIMS

Plaintiffs incorporate the above facts herein for all purpose.

### 5.1    TEXAS WHISTLEBLOWER

Pursuant to the Texas Government Code Section 554.001 et. seq., the Plaintiffs did in good faith report a violation of law against Gumaro Flores to an appropriate law enforcement authority. Shortly thereafter, the Defendants began to take adverse personnel action against the Plaintiffs. Plaintiffs have complied with all conditions precedent including the voluntary grievance procedures, but no relief has been availed as no grievance has been granted by the Defendants which dismissed them. Defendant City of Sullivan City and the individual Defendants are guilty of retaliating against the Plaintiffs and are liable for all damages incurred by the Plaintiffs.

### 5.2    DEFAMATION OF CHARACTER

Plaintiffs sue the individual Defendants for defamation of their good reputation due to the

publication of false and non-privileged statements by the individual Defendants to third persons. The statements were all made in reference to Plaintiffs' work performance, their professional integrity and other matters concerning their occupation and related to acts which accuse the Plaintiffs of the commission of crimes and/or immoral and dishonest conduct. The defamatory statements were made directly about Plaintiffs or were so closely associated with the Plaintiffs as to constitute allegations against the Plaintiffs themselves. Because of this fact, it is clear that the publication was made of, and concerning the Plaintiffs, and was so understood by those persons who heard the statements.

The defamatory statements made the subject of this lawsuit were uttered with malice and bad faith for the purpose of causing injury to the Plaintiffs. In this connection, Plaintiffs will show that the individual Defendants harbored feelings of ill will towards them. Defendants' publication of slander and slander per se were made with malice for the reason that it was made with knowledge that it was false or with such utter recklessness as to indicate a disregard to the consequences and conscious indifference to the rights of the Plaintiffs.

## 5.3    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The Plaintiffs further asserts that the individual Defendants' actions in the nature and extreme and outrageous conduct were intentional and reckless whose purpose was to cause infliction of severe emotional distress to the Plaintiffs. Said action and statements were extreme and outrageous and shocked the conscience of reasonable and prudent persons. Defendants' actions caused Plaintiffs mental as well as physical pain. As a result of Defendants' actions, Plaintiffs have suffered damages in amounts which exceed the minimum jurisdictional requirements of the Court.

## 5.4    CIVIL CONSPIRACY

The individual Defendants, in order to promote their own personal interests, agreed to circumvent the requirements of Texas law for public officials concerning open meetings, and discussion of matters which concern municipal business. The individual Defendants violated State law in order to further violate the Plaintiffs' own property rights and interests, and in violation of their rights. As such, the individual Defendants are liable to the Plaintiffs for all damages available at law.

## 6.    CONDITIONS PRECEDENT

All conditions precedent have occurred or are occurring.

## 7.    ACTUAL DAMAGES

As a result of the incidents described above, that are made part of the basis of this suit and incorporated herein, Plaintiffs has incurred damages in the following respects:

### 7.1    INJURY TO REPUTATION AND CHARACTER

As a result of the dissemination of false information and the attendant publicity caused by the Defendants, Plaintiffs are and will in the future be seriously injured in good name and reputation in the community and exposed to hatred contempt, and ridicule of the general public, as well as potential employers, friends, and relatives. Plaintiffs' position were one of high public trust and they have suffered damages in amounts which exceed the minimum jurisdiction requirements of this Court.

### 7.2    LOST EARNINGS AND DIMINISHED EARNING CAPACITY

At the time of the incident complained of, Plaintiffs were gainfully employed as a Chief of Police/Sergeant-Warrant officer with the City of Sullivan City. As a proximate result of the wrongful acts of the Defendants, Plaintiffs were unable to attend to their occupation and thereby suffered a loss of wages in the past, fringe benefits and other valuable job rights for which they hereby sue. As a result of the wrongful acts of the Defendants, Plaintiffs' capacity to earn a livelihood has been severely impaired, and in all reasonable probability this injury will continue long after into the future, if not for the balance of Plaintiffs' natural life, all to their damages for which they hereby sues.

### 7.3    PAST AND FUTURE MEDICAL EXPENSES

As a result of the injuries inflicted upon the Plaintiffs by the Defendants, Plaintiffs were caused to incur medical bills in the past and in all reasonable probability will be likely to incur other medical bills related to the injuries. Plaintiffs have suffered damages in amount which exceed the minimum jurisdictional requirements of this Court.

### 7.4    PAST AND FUTURE MENTAL ANGUISH

As a result of the injuries sustained by the Plaintiffs and inflicted by the Defendants, Plaintiffs have suffered severe emotional distress, headaches, embarrassment, anxiety, sleeplessness, worry, nervousness and other physical as well as mental pain and anguish and in all reasonable

probability, Plaintiffs will continue to suffer such mental and physical pain and anguish for a long time into the future, if not for the balance of their natural lives. Plaintiffs have suffered damages in an amount which exceed the minimum jurisdictional requirements of this Court.

8.    **EXEMPLARY DAMAGES**

The conduct of the individual Defendants was carried out willfully, maliciously, with ill will, and constituted such an entire want of care as to constitute a conscious indifference to the rights or welfare of these Plaintiffs. Plaintiffs are hereby entitled to recover exemplary damages to deter such cruel and undignified procedures by the individual Defendants in the future. Prior to terminating the Plaintiffs, the individual Defendants were advised by counsel that their actions were wrongful, yet the individual Defendants also sought the advise of other persons on ways to remove the Plaintiffs. Accordingly, Plaintiffs request that exemplary damages be awarded against the individual Defendants in amounts which exceed the minimum jurisdictional requirements of this Court.

9.    **ATTORNEYS' FEES AND LITIGATION EXPENSES**

By reason of the allegations of this petition, Plaintiffs are entitled to recover reasonable attorney's fees and expert fees in a sum that is reasonable and necessary. In this connection, Plaintiffs will show that the attorneys whose names are subscribed to this pleading have been employed to assist Plaintiffs in the prosecution of this action. A reasonable attorney's fee is requested for the work expended in preparation and trial of this cause along with a reasonable fee for any and all appeals to other courts. Reasonable and necessary attorney's fees are sought pursuant to 42 U.S.C. Section 1988. Plaintiffs further plead for the recovery of reasonable and necessary expenses for the use of paralegals and/or law clerks who assisted in the prosecution of this case. As permitted by law, Plaintiffs also seek to recoup all litigation expenses expended by them and their legal team in the prosecution of this lawsuit as well as all costs of Court.

10.    **REQUEST FOR JURY TRIAL**

Plaintiffs hereby request a trial by jury of their peers.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that this Honorable Court have trial in this cause and award judgment against the Defendants for Plaintiffs' damages, actual and special, all punitive damages, attorney's fees, litigation fees and expenses, pre-judgment as allowed by law, interest on said judgment at the legal rate from the date of judgment, for costs of suit herein,

and for such other and further relief, at law or in equity as to which Plaintiffs may be justly entitled.

Respectfully submitted,

SANCHEZ, WHITTINGTON, JANIS
   & ZABARTE, L.L.P.
100 North Expressway 83
Brownsville, Texas  78521-2284
Telephone:  (956) 546-3731
Telefax:  (956) 546-3766

By: _____
Francisco J. Zabarte
State Bar No. 22235300
Federal I.D. No. 10747

Miguel Salinas
State Bar No. 17534750
Federal I.D. No. 15171
Law Office of Miguel Salinas
803 Old Port Isabel Road
Brownsville, Texas 78521
Telephone: (956) 550-1115
Telefax: (956) 550-1134
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Amended Complaint has on August 5, 2004, been forwarded via certified mail, return receipt requested to: J. Arnold Aguilar, Law Office of J. Arnold Aguilar, Artemis Square, Suite H-2,1200 Central Blvd., Brownsville, Texas 78520.

_____
Francisco J. Zabarte