# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 1 3 2005

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| MARIO ALANIZ, JR. | § | |
| | § | |
| VS. | § | |
| | § | **CIVIL ACTION NO.** |
| | § | |
| THE CITY OF SULLIVAN CITY, TEXAS, | § | **B - 04 - 040** |
| TEXAS, GUMARO FLORES, in his and | § | |
| Official Capacity as Mayor of Sullivan | § | |
| City, REYNALDO RUIZ and FROILAN | § | |
| RAMIREZ, in their Individual and Official | § | |
| Capacities as Commissioners and ROLANDO | § | |
| GONZALEZ, in his Individual and Official | § | |
| Capacity as City Manager | § | |

---

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

TO THE HONORABLE U.S. DISTRICT COURT:

COME NOW DEFENDANTS **CITY OF SULLIVAN CITY, TEXAS, GUMARO FLORES,** in his and Official Capacity as Mayor of Sullivan City, **REYNALDO RUIZ** and **FROILAN RAMIREZ,** in their Individual and Official Capacities as Commissioners and **ROLANDO GONZALEZ,** in his Individual and Official Capacity as City Manager, Defendants herein and file this their Motion for Summary Judgment, and in support thereof would respectfully show the Court the following.

# I.

## SUMMARY OF THE ARGUMENT

Plaintiffs were at will employees of the City of Sullivan City. Plaintiff Alaniz' employment was terminated to restore the morale of the police department. Plaintiff Gonzalez' employment was terminated because his temporary position was eliminated due to budgetary constraints.

Plaintiff Gonzalez' Whistleblower's Act claims are time barred, and both Plaintiffs have no evidence of any law that may have been violated, even if his allegations were true. Plaintiffs' speech was made in the context of an ongoing departmental power struggle and the content and context of that speech was made in their role as employees. Further, Defendants had legitimate, non-discriminatory reasons for the termination of Plaintiffs' employment that outweighed any interest Plaintiffs had in commenting about what they perceived to be occurring within the department. Both Plaintiffs testified that Defendants Reynaldo Ruiz, Froilan Ramirez, and Rolando Gonzalez said nothing defamatory about them. Plaintiff Gonzalez admitted the Mayor did not speak about him derogatorily, and Plaintiff Alaniz has no admissible evidence that the Mayor defamed him. Thus, this Court should dismiss all of Plaintiffs' claims with prejudice.

# II.

## FACTUAL STATEMENT

Plaintiff Mario Alaniz, Jr. is the former Chief of the City of Sullivan City Police Department. *See* **Exhibit A**, Affidavit of J. Arnold Aguilar with attached **Exhibit A-1**, deposition of Mario Alaniz, Jr. ("Alaniz Depo.") at p. 49:1-25. Plaintiff Blas Gonzalez is the former warrant officer, who had been working for the City of Sullivan City's Magistrate Judge. *See* **Exhibit A**, Affidavit of J. Arnold Aguilar with attached **Exhibit A-2**, deposition of Blas Gonzalez ("Gonzalez Depo.") at pp. 67:17 – 68:20. Both Plaintiffs were employees at will. Plaintiff Alaniz was

terminated from his position at the December 15, 2003 City Meeting. *See* **Exhibit A-1,** Alaniz
Depo. at p. 173:1-17. When Plaintiff Gonzalez began working as the City's warrant officer, he
filled a temporary position, and he understood that the position could be eliminated at any time. *See*
**Exhibit A-2,** Gonzalez Depo. at pp. 68:24 – 70:23. Due to budgetary considerations, the warrant
officer position was slated to be eliminated on January 31, 2004, and the announcement was
forwarded to Plaintiff Gonzalez, who nonetheless was allowed to remain employed in that position
until March 8, 2004. *See* **Exhibit B,** January 27, 2004 memo re: warrant officer position; *See*
**Exhibit A-2,** Gonzalez Depo. at p. 111:9-16 (terminated March 8, 2004). Both Plaintiffs admitted
that there had been an internal, departmental power struggle between Plaintiff Alaniz and the
person who was Assistant Chief of Police at the time, Hernan Guerra, and they admitted that at the
culmination of that struggle, Plaintiff Alaniz was terminated. *See* **Exhibit A-1,** Alaniz Depo. at pp.
52:1 – 54:4; 130:19 –131:20; see also **Exhibit A-2,** Gonzalez Depo. at pp. 90:2 - 111:8 (describing
the power struggle in detail, including that individual officers suffered anxiety attacks because of
the power struggle).

The internal power struggle began when Plaintiff Alaniz was promoted by the City
Commission to Chief of the Sullivan City Police Department on July 27, 2002. *See* **Exhibit A-1,**
Alaniz Depo. at p. 49:1-25. During Plaintiff Alaniz' tenure as Chief, Hernan Guerra was the
Assistant Chief of Police. *See* **Exhibit A-1,** Alaniz Depo. at pp. 48:18 – 49:22 Assistant Chief
Guerra had been in that position prior to Plaintiff's promotion, and Plaintiff had been promoted
over Guerra. *See* **Exhibit A-1,** Alaniz Depo. at p. 49:13-19. Plaintiff Alaniz testified that he
believed both Assistant Chief Guerra and the Mayor believed that Guerra should have been made
Chief because he had been employed with the City longer. *See* **Exhibit A-1,** Alaniz Depo. at pp.
49:15 – 50:16. Alaniz agreed that there was a power struggle between him and the Assistant Chief.

*See* **Exhibit A-1,** Alaniz Depo. at p. 52:1-14; *see also* **Exhibit A-2,** Gonzalez Depo. at pp. 96:2-25; 105:8-25.  More than a year after Plaintiff had been promoted to Chief, near the end of October 2003, Plaintiff Alaniz discovered that a "no confidence letter" regarding his administration of the police department had been circulating among the police officers. *See* **Exhibit A-1,** Alaniz Depo. at pp. 50:16 –51:25.  Plaintiff believed that Assistant Chief Guerra, along with other officers, had been spearheading the "no confidence" movement within the department, and Plaintiff immediately called a departmental meeting at which all of the officers and the Magistrate Judge were present; the Assistant Chief was not present, nor was he invited to attend this meeting. *See* **Exhibit A-1,** Alaniz Depo. at pp. 50:25 – 55:7

At the meeting, Plaintiff Alaniz persuaded several of the officers to reverse their claims and complain about Assistant Chief Hernan Guerra instead. *See* **Exhibit A-1,** Alaniz Depo. at pp. 54:8 - 55:4.  As a result, those officers wrote affidavits complaining about Hernan Guerra, apparently because Alaniz now wanted to fire Guerra for cause.  *See* **Exhibit A-1,** Alaniz Depo. at pp. 67:7- 21; 100:1-12; 188:10-21.  The affidavits were only prepared after the "no confidence" issue arose. *See* **Exhibit A-1,** Alaniz Depo. at pp. 100:1-12; 188:10-21; *see also* **Exhibit A-2,** Gonzalez Depo. at pp. 106:2 – 108:20.   Alaniz then forwarded the affidavits to the Hidalgo County District Attorney's Office. *See* **Exhibit A-1,** Alaniz Depo. at pp. 173:19 – 176:5.

The day after the departmental meeting, Plaintiff Alaniz attempted to relieve the Assistant Chief of his supervisory duties, by sending City Manager Gonzalez a letter informing him of his decision and requesting to take the "no confidence" matter before the City Commission at the next City meeting. *See* **Exhibit A-1,** Alaniz Depo. at p. 52:1-19; *see also* **Exhibit D,** Plaintiff's October 28, 2003 letter.  In response, the City Manager told Plaintiff Alaniz not to take any action against the Assistant Chief until the next City meeting. *See* **Exhibit A-1,** Alaniz Depo. at pp. 55:21 – 56:7.

The next City meeting was held on December 15, 2004. *See* **Exhibit A-1,** Alaniz Depo. at pp. 56:9 – 57:3.    When Alaniz informed the Mayor about the "no confidence" movement and his suspension of the Assistant Chief, the Mayor asked him to refrain from acting on the suspension for a month until he cooled down. *See* **Exhibit A-1,** Alaniz Depo. at pp. 55:8 – 56:8.    Plaintiff also admitted that the Mayor later told him that if he "didn't settle down and get along with Hernan Guerra, [he] needed to start looking for another job." *See* **Exhibit A-1,** Alaniz Depo. at p. 102:13-20.

Before the next City meeting occurred, on November 28, 2003 (the day after Thanksgiving), Plaintiff sent the Mayor a letter, asking him not to interfere in plaintiff's day-to-day administration of the Police Department. *See* **Exhibit A-1,** Alaniz Depo. at pp. 168:20 – 169:25; *see also* **Exhibit E**, Plaintiff's November 28, 2003 letter.    The letter in its entirety read as follows:

> This letter is in regards to our discussion this morning.  I have received numerous complaints from the Sullivan City Police Personnel regarding your interference with their police duties, as well as complaints of you approaching them and making negative comments regarding the officers and myself, as well as ordering them not to call me whenever I am off because you run this department not me.  As I informed you this morning, you have me here as the Chief of Police; Therefore, I am in charge of running this department.

> I am advising you that this matter has been taken to a higher authority.  We are claiming protection under the Federal Whistle Blowers Act, and any actions taken against my officers or myself will be considered retaliation.

Plaintiff explained that "our discussion this morning" referred to a conversation with the Mayor in which Plaintiff asked the Mayor not to reprimand the dispatcher, which the Mayor had begun doing in Plaintiff's presence, and to address any problems that the Mayor might have with any officer to Plaintiff directly in the future. *See* **Exhibit A-1,** Alaniz Depo. at pp. 168:21 – 172:18.    Plaintiff told the Mayor that he would explain himself more fully in a letter (see above). *See* **Exhibit A-1,** Alaniz Depo. at pp. 169:22 – 170:6.  The specific "interference" to which Plaintiff was referring

was the reprimand of the dispatcher, and generally to the daily administration of the department, including reprimands and addressing complaints, to Plaintiff.  *See* **Exhibit A-1,** Alaniz Depo. at pp. 168:20 – 171:16.   The "higher authority" to which Alaniz was referring was the Hidalgo Sheriff's Department, though he did not identify the actual complaints that were made during his meeting with the Mayor. *See* **Exhibit A-1,** Alaniz Depo. at pp. 171:14 – 172:18.   The District Attorney later responded that the allegations and evidence, which apparently included the affidavits described above, were insufficient for an indictment and that the issues as presented were internal departmental matters.  *See* **Exhibit A-1,** Alaniz Depo. at pp. 67:7-21; 173:19 – 176:5; *see also* **Exhibit C,** December 12, 2003 Hidalgo County District Attorney letter.

Although Plaintiff may have intended to communicate more specific types of "interference" in his letter by referencing the Whistleblower's Act protections, Plaintiff admitted that the cryptic reference in the letter did not inform the Mayor to whom he was complaining, and he admitted that the letter merely informed the Mayor that he was complaining to someone else that the Mayor was generally meddling in Alaniz' administration of the department – the main topic of their discussion that morning. *See* **Exhibit A-1,** Alaniz Depo. at pp. 170:14 – 172:18.   At the end of the following week, on December 3, 2003, Plaintiff was informed that the Mayor had been offended by the November 28, 2003 letter. *See* **Exhibit A-1,** Alaniz Depo. at p. 187:10-22.   On December 7, 2003, Plaintiff was suspended. *See* **Exhibit A-1,** Alaniz Depo. at p. 172:19-25; *see also* **Exhibit F,** December 7, 2003 Memorandum suspension letter.  Plaintiff's position as Chief was placed on the agenda for the December 15, 2003 City meeting. *See* **Exhibit A-1,** Alaniz Depo. at p. 173:1-17. Plaintiff Alaniz and his attorney attended that meeting, and Plaintiff Alaniz' employment was terminated during that meeting.

Despite the fact that Plaintiffs were actively engaged in an internal, departmental power struggle, Plaintiffs have nevertheless sued the City, its Mayor, its Councilmen and its City Manager for alleged violations of their rights to free speech and the Texas Whistleblower's Act, and for claims of defamation.  Defendants will show that Plaintiffs cannot prevail as a matter of law on any of their claims.

### III.

### STANDARD OF REVIEW

**A.    Standard for Summary Judgment.**

Summary Judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 261 (5th Cir. 1999).  The movant must "demonstrate the absence of a genuine issue of material fact." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986)).  If the movant meets its burden, the non-movant must then go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Id.*  The non-movant's burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.  *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).  Even if the evidence is more than a scintilla, some evidence may exist to support a position, which is yet so overwhelmed by contrary proof as to yield to a summary judgment.  *See Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir. 1996).

Furthermore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported Motion for Summary Judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247-48, 106 S. Ct. 2505, 2508 (1986) (emphasis in original). An issue is "material" if it involves a fact that might affect the outcome of the suit under the governing law. ***Merritt-Campell, Inc., v. RxP Products, Inc.***, 164 F.3d 957, 961 (5th Cir. 1999). Factual disputes that are irrelevant or unnecessary are not counted. ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. at 247-8, 106 S. Ct. at 2508.

## B.    Qualified Immunity Standard

There is a presumption that individual Defendants are entitled to federal qualified immunity. To establish that the individual Defendants, Gumaro Flores, Reynaldo Ruiz, Froilan Ramirez and Rolando Gonzalez are *not* entitled to qualified immunity, the Plaintiffs must satisfy a three-pronged test. First, they must allege facts that assert a violation of a constitutional right. ***Hare v. City of Corinth***, 135 F.3d 320, 325 (5th Cir. 1998). Second, they must show that this right was clearly established at the time of the Defendants' actions, and third, they must show that the Defendants' actions were objectively unreasonable. ***Eugene v. Alief Indep. Sch. Dist.***, 65 F.3d 1299, 1305 (5th Cir. 1995). Even if Defendants' conduct infringed upon a constitutional right of the Plaintiffs, official immunity will shield the Defendants if their conduct was objectively reasonable. ***Gutierrez v. City of San Antonio***, 139 F.3d 441, 445 (5th Cir. 1998). Plaintiffs have not alleged the violation of a clearly established right of which Defendants would reasonably have known. If this Court finds that Plaintiff's terminations arguably did involve the violation of a constitutional right, however, then Defendants contend that their actions were objectively reasonable in light of all of the circumstances involving their terminations. Once a defendant asserts qualified immunity in a properly supported motion for summary judgment, the burden shifts to the Plaintiffs to come forward with summary judgment evidence sufficient to sustain a determination that the defendant's

conduct violated clearly established federal law. *Blackwell v. Barton*, 34 F. 3d 298, 301 (5th Cir. 1994).

C.    **Official Immunity Standard**

The state law official immunity doctrine protects governmental employees from civil liability under *state law* for conduct that would otherwise be actionable. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). Official immunity is based on the sound public policy that encourages public officers to perform their discretionary duties without fear of personal liability for negligent or improper performance. *Champan v. Gonzales*, 824 S.W.2d 685, 687 (Tex.App.-- Houston [14[th] Dist.] 1992, writ denied). Official immunity is an affirmative defense that protects government employees from personal liability. *Univ. of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000). A governmental employee is entitled to official immunity, (1) for the performance of discretionary duties, (2) within the scope of the employee's authority, (3) provided the employee acts in good faith. *Wadewith v. Montogomery*, 951 S.W.2d 464, 466 (Tex. 1997). Generally, municipal officers are not personally liable for acts performed within the scope of their public duties; public officials are held personally liable only when they have acted willfully or maliciously. *Richardson v. Thompson*, 390 S.W.2d 30, 35 (Tex. Civ. App.-- Dallas 1965, writ dism'd). To be entitled to summary judgment, an official must prove that a reasonably prudent official might have believed that the actions taken were appropriate. *Chambers*, 882 S.W.2d at 656-657. The official does not need to prove that it would have been unreasonable to take different action, nor must the officer prove that all reasonably prudent officers would have acted as he did. *Id.* at 657.

## IV.

## LEGAL ANALYSIS

### A.  Texas Whistleblower's Act Claims

The Texas Whistleblower Act authorizes suits by a public employee against his employing state or local governmental entity for violation of the Act. TEX. GOV'T CODE § 554.03. The Whistleblower Act prohibits the suspension or termination of employment of a public employee because that employee, in good faith, reports a violation of law by his employer or a public employee "to an appropriate law enforcement authority." TEX. GOV'T CODE § 554.002(a) (Vernon 1994).  A public employee, however, must bring his claim timely. *See University of Tex. Med. Branch v. Barrett*, ___ S.W.3d___, WL 563094 (Tex. Mar. 11, 2005)(claim must be brought timely or it is barred).  As a matter of law, Plaintiff Blas Gonzalez has not brought his Whistleblower's Act claim timely.

After his termination, Plaintiff Gonzalez requested a grievance hearing, and his request was denied on April 20, 2004. *See* **Exhibit A-2,** Gonzalez Depo. at pp. 115:11-20 (requesting grievance hearing); 124:13 – 125:23 (letter denying request).  The denial terminated his grievance proceedings.  Taking the broadest possible limitations period and applying section 554.005 of the Texas Government Code, Plaintiff Gonzalez had 90 days from April 20, 2004 to timely file suit, which would have been July 19, 2004.  Plaintiffs did not file a motion for leave to file an amended complaint to include Blas Gonzalez and his claims until July 28, 2004, after the statute of limitations for this claim had run.  Therefore, as a matter of law, Plaintiff Gonzalez' Whistleblower's Act claims are time barred and should be dismissed with prejudice.  This Court has additional reasons to dismiss Plaintiffs Alaniz' and Gonzalez' Whistleblower's Act claims.

This Court held, in its August 4, 2004 Order, "Plaintiff[s] will ultimately need to identify which provisions of the Texas code the Mayor's alleged actions would violate if true and which give rise to the whistleblower claim." *See* Aug. 4, 2004 Order at p. 17 (citing ***Llanes v. Corpus Christi Indep. Sch. Dist.***, 64 S.W.3d 638, 642-43 (Tex. App.—Corpus Christi 2001, pet. denied)). Plaintiffs testified, however, that they were unable to identify any provisions of Texas law the Mayor's alleged actions would have violated, if true.

Plaintiff Alaniz indicated that he reported to the Hidalgo County District Attorney, the FBI, the Hidalgo County Sheriff's Department and the City Manager the following: (1) the Mayor ordered Alaniz to issue traffic citations to Mayor's political opponents and take away citations from his friends [**Exhibit A-1,** Alaniz Depo. at p. 60:6-11]; (2) the officers were ordered to dismiss their own tickets [**Exhibit A-1,** Alaniz Depo. at p. 61:15-18]; (3) the officers were ordered to change traffic tickets to warnings [**Exhibit A-1,** Alaniz Depo. at p. 61:20-21]; (4) the Mayor would dictate where the officers were to patrol [**Exhibit A-1,** Alaniz Depo. at p. 62:4-8]; (5) Hernan Guerra was taking items from the evidence room [**Exhibit A-1,** Alaniz Depo. at p. 62:1-2]; (6) the Mayor would interfere with burglary investigations by walking through the properties, possibly contaminating the crime scenes [**Exhibit A-1,** Alaniz Depo. at pp. 65:6 – 66:17]; and (7) the Mayor grabbed a suspect and would not let the suspect wipe away pepper spray [**Exhibit A-1,** Alaniz Depo. at p. 76:14-16]. Plaintiff Alaniz could not identify any laws the Mayor would have violated in the above seven items about which he complained. *See* **Exhibit A-1,** Alaniz Depo. at pp. 75:18 – 91:24. Plaintiff Gonzalez stated that he reported the same matters to the Hidalgo County District Attorney's Office and to the Hidalgo County Sheriff's Department. *See* **Exhibit A-2,** Gonzalez Depo. at pp. 131:1 – 133:14. Plaintiff Gonzalez agreed that he also could not identify any laws that were allegedly violated. *See* **Exhibit A-2,** Gonzalez Depo. at pp. 139:5 - 143:17.

Plaintiffs also agreed that at the time they submitted these complaints to the Hidalgo County District Attorney, Plaintiffs did not indicate to the District Attorney what law(s) they thought were violated. *See* **Exhibit A-1,** Alaniz Depo. at p. 174:5-15. The District Attorney ultimately found no violations of any law and concluded that the matters described were internal departmental matters. *See* **Exhibit A-1,** Alaniz Depo. at pp. 173:19 – 174:44; *see also* **Exhibit C,** December 12, 2003 Hidalgo County District Attorney letter. In other words the District Attorney found the complaints to be employment matters, not criminal matters. Plaintiffs have no evidence that the matters about which they complained violated Texas law, and Defendants have submitted competent evidence that the identified actions did not violate Texas Law. Therefore, Plaintiffs cannot prove an essential element of their Whistleblower's Act claims and those claims should be dismissed with prejudice.

**B.    Free Speech Retaliation Claims**

Plaintiffs assert constitutional claims through 42 U.S.C. § 1983 against the City of Sullivan City, claiming that the Mayor, the City Commissioners and the City Manager retaliated against them for exercising their First Amendment rights to free speech. (Pls.' First Am. Compl. ¶ 4.1.) They also make the same claims against the individual defendants.

There are four elements to an employee's First Amendment free speech retaliation claim against his employer:

> First, the Plaintiff must suffer an adverse employment decision. Second, the Plaintiff's speech must involve a matter of public concern. Third, the Plaintiff's interest in commenting on matters of public concern must outweigh the Defendants' interest in promoting efficiency. Fourth, the Plaintiff's speech must have motivated the Defendants' action.

*Teague v. City of Flower Mound, Texas*, 179 F.3d 377, 380 (5th Cir. 1999)(internal citations omitted). Plaintiffs have no evidence to support the second and third prongs of their retaliation claims – that their speech involved a matter of public concern, and that the Defendant's interest in promoting efficiency outweighed Plaintiffs' interests in commenting on the departmental matters.

### 1.  Plaintiffs' speech involved departmental, employment matters.

Initially, Plaintiffs must prove that they actually spoke or otherwise engaged in speech activities recognized by First Amendment jurisprudence. *Steadman v. Texas Rangers*, 179 F.3d 360, 366 (5th Cir. 1999). Although a public employee may not be discharged for exercising his or her right to free speech under the First Amendment, it is clear that only certain speech is protected. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1050 (5th Cir. 1996). Whether a Plaintiff's alleged speech pertains to a matter of public concern is determined by the content, form, and context of the speech. *Wallace v. Texas Tech Univ.*, 80 F.3d at 1050. When a public employee speaks not as a citizen but instead as an employee upon a matter of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency, allegedly in reaction to the employee's behavior. *Brady v. Fort Bend County*, 145 F.3d at 706 (quoting *Connick v. Myers*, 461 U.S. 138, 146-47, 103 S. Ct. 1684 (1983)). Therefore, if the Plaintiffs' alleged speech cannot be fairly characterized as constituting speech on a matter of public concern, it is unnecessary for a Court to scrutinize the reasons for each Plaintiff's termination. *Id.* Plaintiffs have not yet provided any evidence that any alleged speech was actually was protected, however. The only speech identified by either Plaintiff involved matters of internal employment disputes and was made primarily in the Plaintiffs' roles as

employees. *See Teague v. City of Flower Mound*, 179 F.2d 377, 382 (5th Cir. 1999) (speech made primarily as employee is not protected because it is not a matter of public concern).

The overall context in which Plaintiffs' spoke involved the ongoing power struggle with the Assistant Chief. *See* **Exhibit A-2,** Gonzalez Depo. at pp. 159:4 – 163:20 (placing complaints in the context of dispute over the running of department). It was only after, and in the context of, Assistant Chief Guerra's "no confidence" movement within the department that Alaniz sent the November 28, 2003 letter to the Mayor and chose to disseminate information about the department to the Hidalgo County District Attorney's Office, the Hidalgo County Sheriff's Office and the FBI. As shown in the above Whistleblower section, both Plaintiffs complained about the following: (1) the Mayor ordered Alaniz to issue traffic citations to Mayor's political opponents and take away citations from his friends; (2) the officers were ordered to dismiss their own tickets; (3) the officers were ordered to change traffic tickets to warnings; (4) the Mayor would dictate where the officers were to patrol; (5) Hernan Guerra was taking items from the evidence room; (6) the Mayor would interfere with burglary investigations by walking through the properties, possibly contaminating the crime scenes; and (7) the Mayor grabbed a suspect and would not let the suspect wipe away pepper spray. The Hidalgo County District Attorney found no merit to the assertions and found that the complaints essentially dealt with internal departmental matters. More importantly the Fifth Circuit has held that similar types of complaints were not matters of public concern afforded the protections of the First Amendment.

In *Alexander v. Eeds*, the Fifth Circuit recently held that Officers' complaining about (1) the fairness of a promotion process that allegedly reeked of cronyism, (2) a prohibition of wearing identity concealing masks, and (3) numerous complaints of perceived policy and law violations in the department, were essentially private and employment related in nature and not

matters of public concern.  392 F.2d 138, 143-44 (5th Cir. 2005).

In *Gillum v. City of Kerrville*, the Fifth Circuit found that even though the plaintiff's speech involved a matter of public concern, the plaintiff had spoken "as an employee embroiled in a personal employment dispute."  3 F.3d 117, 121 (5th Cir. 1993).  Plaintiff Alaniz testified that the purpose of sending the November 28, 2003 letter to the Mayor was to "[g]et things to settle down."  *See* **Exhibit A-1,** Alaniz Depo. at pp. 126:14 – 127:13.  Alaniz' and Gonzalez' meeting with all of the officers of the department to discuss the "no confidence" issue had occurred one month before.  The working atmosphere within the department had deteriorated to such a level that the officers were under stress, nervous, suffered anxiety attacks, cried, took medication for the stress, and were looking elsewhere for jobs. *See* **Exhibit A-2,** Gonzalez Depo. at pp. 108:11 – 111:8.  Plaintiffs were clearly embroiled in a long-standing employment dispute, a power struggle that had affected the morale and working atmosphere of the entire police department.  The speech for which Plaintiffs claim First Amendment protections was uttered in this context and because of the power struggle within the department.  The content of that speech, under Fifth Circuit precedent and according to the Hidalgo County District Attorney, involved internal –essentially private- employee matters and are thus not matters of public concern entitled to First Amendment protection.  Based on the above arguments, the individual defendants are entitled to qualified immunity, and this Court should dismiss Plaintiffs' First Amendment free speech retaliation claims.

## 2.    Defendant's interest in promoting efficiency outweighed Plaintiff's interest in speaking.

This Court has an additional reason to dismiss Plaintiffs' First Amendment retaliation claims.  Plaintiffs have no evidence that their alleged interest in commenting on matters of public

concern outweighed the Defendants' interest in promoting efficiency. *Teague v. City of Flower Mound, Texas*, 179 F.3d 377, 380 (5th Cir. 1999). Defendants have presented evidence that the working conditions and the morale of the Police Department had deteriorated to such a point that it caused individual officers to weep and to take medication to alleviate the stress and anxiety of their employment. *See* **Exhibit A-2,** Gonzalez Depo. at pp. 108:11 – 111:8. Defendants had a legitimate, non-discriminatory reason to terminate Plaintiff Alaniz' employment, and Defendants' interest in improving atmosphere in and around the Police Department outweighed Plaintiffs' interest in speaking about the department over which he had been in charge.

Plaintiff Gonzalez' employment as warrant officer had been a temporary position. Plaintiff admitted that the City had the right to eliminate that position whenever it chose. The position was eliminated for fiscal, budgetary reasons. *See* **Exhibit B**, January 27, 2004 memo re: Warrant Officer position. Defendants had a legitimate, non-discriminatory reason to terminate Plaintiff Alaniz' employment.

Defendants' actions were objectively reasonable, even if they may have "infringed upon" Plaintiff's constitutional rights. *See Wagner v. Bay City, Texas*, 227 F.3d 316, 321 (5th Cir. 2000); *Gutierrez v. City of San Antonio*, 139 F.3d 441, 445 (5th Cir. 1998). Even "when a public employee shows that protected speech was a 'motivating factor' in an adverse employment decision, the employer still prevails by showing that it would have reached the same decision in the absence of the protected conduct." *Crawford-El v. Britton*, 523 U.S. 574, 593, 118 S. Ct. 1584, 1594, 140 L.Ed.2d 759 (1998) (citing *Mt. Healthy City Bd. Of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 576, 50 L.Ed.2d 471 (1977)). Without any evidence that the Defendants' actions violated Plaintiffs' *clearly established* constitutional rights, or that their actions were objectively unreasonable, Defendants are entitled to entry of summary judgment herein.

### 3.    Plaintiffs have no evidence of a custom or policy of the City of Sullivan City

The United States Supreme Court has held that a municipality may not be held liable under § 1983 solely because it employs a tortfeasor. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 58, 689, 98 S. Ct. 2018, 2035 (1978); *Board of County Commissioners of Bryant County v. Brown Commissioners*, 520 U.S. 397, 403-11, 117 S. Ct. 1382, 1388 (1997). The Court has also "consistently refused to hold municipalities liable under a theory of *respondeat superior*." *Board of County Commissioners of Bryant County v. Brown*, 520 U.S. at 403, 117 S. Ct. at 1388. Second, the Supreme Court has instructed that to hold the City of Sullivan City liable, Plaintiffs must establish the state-of-mind of the municipality's legislative body or an authorized decision-maker to prove the underlying violation. *Brown*, 520 U.S. at 405, 117 S. Ct. at 1389. That state-of-mind is the deliberate indifference standard. *Brown*, 520 U.S. at 407, 117 S. Ct. at 1390.

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence to his action." *Brown*, 520 U.S. at 410, 117 S. Ct. at 1391. The Fifth Circuit equated the deliberate indifference standard to a criminal law *mens rea* recklessness standard where a person disregards a risk of harm of which he is aware. *Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996) (en banc). Neither negligence nor gross negligence is sufficient to prove that an official acted or failed to act with deliberate indifference. *Brown*, 520 U.S. at 397, 407, 117 S. Ct. 1382, 1390; *Hare*, 74 F.3d at 648-49. The standard is higher. *Hare*, 74 F.3d at 648. Under this strict standard, Defendant City did not violate any alleged constitutional right of Plaintiffs.

Plaintiffs have provided no evidence that their alleged speech was a motivating factor in the Commission's decision to discharge either of them. *Jett v. Dallas Indep. Sch. Dist.*, 798 F.2d 748, 757 (5th Cir. 1986). Plaintiffs have presented no evidence other than their own

conjecture that their respective terminations were based on any impermissible reasons. *See Newman v. Chevron U.S.A.*, 979 F. Supp. 1085, 1093 (S.D. Tex. 1997) (holding Plaintiff's subjective belief of improper reasons for termination was mere speculation and conjecture and insufficient in summary judgment context).

The termination of each of Plaintiff's employment with the City were legal acts, substantiated with legitimate, non-discriminatory reasons for the terminations. No action that can be attributable to the City was taken with deliberate indifference to any known or obviously harmful consequences of those acts. Simply alleging that Plaintiffs have suffered a deprivation of federal rights will not alone permit an inference of municipal culpability and causation. *Brown*, 520 U.S. at 408, 117 S. Ct. 1390.

To establish a § 1983 claim against the City, however, Plaintiffs must provide evidence of an unconstitutional custom or policy of the City by (1) identifying the alleged custom and policy, (2) connecting the policy or custom to the City, and (3) showing that his particular injuries were incurred because of the execution of that custom or policy. *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984) (*en banc*), *cert. denied*, 472 U.S. 1016 (1985). There is no evidence of a policy or custom of the City that caused Plaintiffs constitutional deprivations, which could be shown through a "policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority." *Macias v. Raul A. (Unknown)*, 23 F.3d 94, 99 (5th Cir.), *cert denied*, 513 U.S. 883 (1994

Further, there is no evidence of any custom or policy of the City of Sullivan City that was the moving force that caused Plaintiffs' alleged injuries. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. at 694, 98 S. Ct. 2027. Each Plaintiff's termination was one act, based

on the motives of a group of people. Neither Plaintiff has evidence of any custom or policy of the City of Sullivan City to intentionally deprive him or anyone else of any colorable constitutional right. Simply identifying acts of a single member of the group is not sufficient to hold a municipality liable for that one actor's conduct. *Brown*, 520 U.S. at 404, 117 S. Ct. 1388. "[W]here a claim of municipal liability rests on a single decision, not itself representing a violation of a federal right and not directing such violation, the danger that a municipality will be held liable without fault is high." *Brown*, 520 U.S. at 408, 117 S. Ct. at 1390.

Defendant has proven with admissible summary judgment evidence that (1) the City Commission did not act with deliberate indifference to terminate Plaintiffs' employment; (2) the acts of the Mayor, even if they are taken as true, are not the acts of the City; (3) there is no nexus between Plaintiffs' alleged exercise of their free speech rights and their terminations; and (4) there is no custom or policy of the City to violate Plaintiffs' rights under the United States Constitution. Therefore, summary judgment is proper on Plaintiff's First Amendment claims against the City.

## C.   <u>Defamation</u>

"Slander is a defamatory statement that is orally communicated or published to a third person without legal excuse." *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995). "[T]ruth is an affirmative defense to slander." *Id.*; *Town of South Padre Island v. Jacobs*, 736 S.W.2d 134, 140 (Tex. App.- Corpus Christi 1986, writ denied). As this Court noted in its August 4, 2004 Order, "Plaintiff[s'] defamation claim[s] must allege facts demonstrating the Defendant:'(1) published a statement; (2) that was defamatory; (3) while acting with either malice, if the Plaintiff was a public official or public figure, or negligence, if the Plaintiff was a private

individual, regarding the truth of the statement.'" Aug. 4, 2004 Order at p. 17 (quoting *Fields v. Keith*, 174 F. Supp. 2d 464, 473 (N.D. Tex.), *aff'd*, 273 F.3d 1099 (5ᵗʰ Cir.2001)).  Texas does not recognize the tort of false light invasion of privacy. *Cain v. Hearst Corp.*, 878 S.W.2d 577 (Tex. 1994).

Plaintiffs sue the individual Defendants for the alleged publication of false and non-privileged statements to third persons, yet they fail to identify any such alleged statements that Defendants Gumaro Flores, Reynaldo Ruiz, Froilan Ramirez and Rolando Gonzalez allegedly made.  Plaintiff Alaniz admitted that these Defendants had said nothing derogatory about him, nor had they called him any names.  *See* **Exhibit A-1**, Alaniz Depo. at pp. 132:17 – 133:3.  Plaintiff Gonzalez also admitted that these Defendants did not say anything about him, nor did the Mayor. *See* **Exhibit A-2,** Gonzalez Depo. at  pp. 134:20 – 137:12.  Because Plaintiffs have identified no comments whatsoever made by these Defendants, including to whom and when they were made, Plaintiffs cannot establish a cause of action for defamation.  Additionally, because Plaintiff Alaniz has no admissible evidence that the Mayor made any defamatory remarks, he cannot establish a cause of action for defamation against the Mayor.  The individual Defendants are therefore entitled to official immunity for these claims and this Court should dismiss these claims with prejudice.

## D.     <u>Punitive Damages</u>

Plaintiffs make claims for punitive damages against the individual Defendants.   (Pls.' Amend. Compl. ¶ 8.) Even though the Supreme Court has ruled that punitive damages are recoverable against a defendant in his individual capacity in a § 1983 claim, plaintiffs may only recover if they can establish that the official conduct in question was motivated by evil intent or demonstrates reckless or callous indifference to constitutional rights. *Brown v. Bryan County*, 67

F.3d 1174, 1181 (5th Cir. 1995). Defendants' summary judgment evidence conclusively proves the Defendants' conduct does not rise to the level of grievous conduct for which they could be subjected to a punitive damages award. *See Id.* In addition, Plaintiffs have not established any basis for negligence against the individual Defendants, much less any malice or gross negligence. Therefore, summary judgment on Plaintiffs' punitive damages claim should be granted.

WHEREFORE, PREMISES CONSIDERED, Defendants **CITY OF SULLIVAN CITY, TEXAS, GUMARO FLORES, REYNALDO RUIZ, FROILAN RAMIREZ, AND ROLANDO GONZALEZ,** would respectfully request that the Court grant their motion and dismiss Plaintiffs' claims against them, and Defendants be granted such other and further relief whether general or special, at law or in equity, to which Defendants may show themselves to be justly entitled.

Signed on this the 13th day of April, 2005.

Respectfully submitted,

**LAW OFFICE**
**J. ARNOLD AGUILAR**
Artemis Square, Suite H-2
1200 Central Boulevard
Brownsville, Texas 78520
Telephone    : (956) 504-1100
Facsimile    : (956) 504-1408

By: _____
J. Arnold Aguilar
State Bar No. 00936270
Federal Adm. No. 6822

John J. Jordan, Jr.
State Bar No. 00796852
Federal Adm. No. 21304

Attorneys for Defendants,
CITY OF SULLIVAN CITY, TEXAS, GUMARO FLORES, REYNALDO RUIZ, FROILAN RAMIREZ, AND ROLANDO GONZALEZ

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** has on this the 13ᵗʰ day of April, 2005, been forwarded via certified mail, return receipt requested to:

*Mr. Frank J. Zabarte*
**SANCHEZ, WHITTINGTON, JANIS & ZABARTE**
100 N. Expressway 83
Brownsville, TX 78521-2284

*Mr. Miguel Salinas*
**LAW OFFICE OF MIGUEL SALINAS**
803 Old Port Isabel Road
Brownsville, TX 78521


_____
John J. Jordan, Jr.